# SAMPLINER *v.* MOTION PICTURE PATENTS COMPANY ET. AL.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 89. Argued November 12, 1920.—Decided December 6, 1920.

A party who joins the opposing party in requesting the District Court to instruct peremptorily upon the ground that the evidence entitles him to a verdict as a matter of law, may reserve his right to go to the jury if the court should regard the facts as disputed; and where such reservation is properly made, the court cannot ignore it and assume to find the facts from the evidence as though the case had been unconditionally submitted. P. 239.

*Held,* that adequate and timely reservation of the right was made in this case.

255 Fed. Rep. 242, reversed.

THE case is stated in the opinion.

*Mr. John G. White*, with whom *Mr. Austin V. Cannon* was on the brief, for plaintiff in error.

*Mr. Samuel Seabury*, with whom *Mr. William M. Seabury, Mr. Robert H. McCarter, Mr. Charles F. Kingsley, Mr. Howard Thayer Kingsbury, Mr. Charles B. Samuels* and *Mr. Alfred P. W. Seaman* were on the brief, for defendants in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

The opinion below is reported in 255 Fed. Rep. 242.

By an assignment executed in Ohio December 28, 1911, the Lake Shore Film and Supply Company, a corporation of that State, undertook to convey to plaintiff in error its claim and right of action against defendants for damages resulting from their violations of the Sherman Act. Relying upon the assignment he brought suit for $750,000 January 16, 1917, in the United States District Court, Southern District of New York. The defendants denied liability, and set up the following as a separate and distinct defense:

"The plaintiff is and at the time of his alleged purchase of the claims in controversy, set up in the complaint herein, was an attorney and counsellor-at-law of the State of Ohio, practicing as such before the Courts of that State. . . . That at the time of said alleged purchase, it was, and is now, the law of the State of Ohio, that an attorney who purchased a demand with full knowledge and notice that the same was contested and would be litigated and with the intent and for the purpose of bringing an action thereon, was guilty of maintenance and champerty and got no title to such demand by such pur-

chase which could be enforced either at law or in equity, and that the same was at said time, and still is, the law of the State of New York. . . . . . That the plaintiff purchased the demand set forth in the complaint with full knowledge and notice that the same was contested and would be litigated and with the intent and for the purpose of bringing action thereon."

All parties agreeing, the court directed a separate trial before a jury upon the issues of fact and law arising under the special defense. Plaintiff in error testified in his own behalf and called two other witnesses—none were called by the defendants. The essential facts as well stated by the Circuit Court of Appeals follow:

"The assignment states that—'For value received the Lake Shore . . . Company . . . hereby sells, assigns, and transfers to J. H. Sampliner all of its rights and interests in and to any and all damages which it has sustained and suffered by reason of injury to its business, because of the unlawful combination and monopoly in restraint of interstate commerce, and in violation of the Sherman Anti-Trust Act, brought about, engaged in and as a result of the unlawful agreement by and between the Motion Picture Patents Company; . . . all of said parties having conspired together for the purpose of ruining and destroying the business of the Lake Shore . . . Company, and contrary to and in violation of the Sherman Anti-Trust Act. . . .'

"The testimony shows that the plaintiff had rendered legal services to the assignor as its general counsel in connection with the difficulties in which it found itself with the defendants, and that those services extended over a period from July, 1910, to December, 1911. The plaintiff regarded the reasonable value of his services as worth from $8,000 to $10,000. On December 10, 1911, he was asked by the president of the Lake Shore Company whether he would be willing to bring suit against the defendants,

and that he replied that he would bring the suit, being
satisfied that the company had a valid claim, and that it
would cost from $8,000 to $10,000. He was informed by
the president of the company that it had been losing
money very heavily, and it was absolutely impossible for it
to undertake any litigation of that kind. He was asked
what the company already owed him, and replied in the
neighborhood of $9,000 or $10,000. He was told the com-
pany did not have the money and could not pay him, and
thereupon he said that, if the company would pay him
$5,000 in cash, he would cancel the indebtedness. After
some reflection the president, Mr. Mandelbaum, told
him that the corporation would transfer to him all rights
it had against the defendants if he would be willing to
accept it as a satisfaction of the company's indebtedness
to him. The plaintiff told him that he would think it over
and give him an answer. After a few days' reflection the
plaintiff expressed a willingness to accept the assignment,
and was told that the board of directors wanted to know
whether, if they made an assignment, the plaintiff would
as a part of the consideration defend the company and
its officers in case any suit was brought against them in
matters growing out of their difficulties with the defend-
ants. He agreed to do this, and the assignment was exe-
cuted.

"It appears, therefore, that the assignment originated,
not with the plaintiff, but with the Lake Shore Company,
and that the consideration for the agreement involved the
payment of a past indebtedness, as well as for future ser-
vices of a professional character. It is also to be noted
that the invalidity of the assignment is set up, not by the
client, the assignor, who has at no time sought to repudiate
it, but by third parties, between whom and the plaintiff
no fiduciary relations have existed."

At the conclusion of the evidence the defendants asked
a directed verdict "on the ground that the plaintiff has

not shown title to this cause of action; on the ground that it now affirmatively appears from the evidence in this case that the agreement under which the plaintiff assumed to bring this cause of action is champertous and void." Thereupon the following occurred—Mr. Rogers representing the plaintiff:

"Mr. Rogers: If your Honor is going to grant the motion for a direction of a verdict I will take a formal objection to it, but my request is that if your Honor is going to find for the defendant, that it be a non-suit to the plaintiff's cause of action. I think that is as far as your Honor can go.

"The Court: You may be right, but the defendant has rested and moves for the direction of a verdict, and I am going to pass on that motion.

"Mr. Rogers: But, your Honor, I submit there aren't any questions of fact on which to go to the jury; I submit the matter is purely a matter of law for your Honor to determine, and I think the question whether the agreement is or is not champertous is one of law for the Court.

"The Court: Well, Mr. Rogers, you may either rest on the motion of the defense and take an exception to such ruling as I make, if it should be adverse, or you can ask to go to the jury. That is entirely for you to determine.

"Mr. Rogers: Well, if there are any questions of fact to be disposed of, your Honor, I ask to go to the jury upon the questions of fact.

"Mr. Seabury: I think he should specify and not put a hypothetical motion.

"The Court: I cannot have any 'ifs.' If you think under Section 973 of the Code, the Court has no right to make a direction, and you are right about it, you will have a good exception; if, on the other hand, the Court is right, your exception will be addressed not to

the question of practice, but to the substantive questions in the case.

"Mr. Rogers: Then, your Honor, may I state my position on the record? -

"The Court: Yes, certainly.

"Mr. Rogers: The defendant having moved for a direction in order to preserve the plaintiff's rights, I beg leave to state my position on the record with the permission of the Court.

"My understanding is that the question is one of law to be passed upon by the Court from the facts adduced. If, however, it is necessary in order to preserve the plaintiff's rights that I make a request to go to the jury, I ask to go to the jury upon the question as to whether or not the plaintiff took an assignment of the cause of action for the intent and purpose to begin an action thereon, and whether the assignment to him was *bona fide* for an antecedent indebtedness.

"The Court: The Court cannot take conditional offers. Counsel is at liberty, if so advised, to request to go to the jury and the Court will rule.

"Mr. Rogers: Then I move for a direction, your Honor, for the plaintiff, upon the issue framed under your Honor's order on the ground the defendant has failed to make out the defense set up in the answer, to wit, that the plaintiff purchased this cause of action—that is the defense that is set up—and I desire to call your Honor's attention particularly to the form of the defense as pleaded. The defense is that this plaintiff's title is void because he purchased this cause of action with the intent to sue thereon. It now appears uncontradicted, from the evidence, that instead of having purchased this cause of action, it was assigned to him under a bona fide assignment for an antecedent indebtedness owing to him for services which he had performed for the corporation.

"The Court: Both sides having moved for a direction

of a verdict, I find as a fact that the plaintiff purchased this cause of action with intent to sue thereon.

"I find, as a fact, also, that the so-called assignment, Plaintiff's Exhibit No. 1, was executed by the Lake Shore Company, through its officers, pursuant to action at a special meeting of the Board of Directors."

A verdict for the defendants was directed and judgment entered thereon. The Circuit Court of Appeals declared itself concluded by the trial court's finding "that the plaintiff purchased this cause of action with intent to sue thereon," and held: "We must dispose of this case upon the theory that the plaintiff did not in fact take this assignment to extinguish a precedent debt, but that he purchased it for the purpose of suing upon it; that he, an attorney at law, purchased from his client for $5,000 a cause of action which he values at $750,000. The question we must answer, therefore, is whether the law sanctions such a transaction between parties standing in the confidential relation of attorney and client. We are satisfied that the common law does not sanction it."

Among other things counsel for plaintiff in error now insist that "if there were any questions of fact to be decided or divergent inferences of fact to be made the District Court erred in not submitting them to the jury." The point is well taken.

Statements by plaintiff's counsel made it sufficiently plain that while he sought an instructed verdict he also requested to go to the jury if the court held a contrary view concerning the evidence. In the circumstances disclosed we think the request was adequate and timely under former opinions of this court. *Empire State Cattle Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 210 U. S. 1, 8; *Sena* v. *American Turquoise Co.,* 220 U. S. 497, 501; *Schmidt* v. *Bank of Commerce,* 234 U. S. 64, 66; *Williams* v. *Vreeland,* 250 U. S. 295, 298. It should have been granted. Clearly some substantial evidence strongly

tended to show that the assignment was taken in extinguishment of an existing indebtedness and not for mere speculation upon the outcome of intended litigation.

> *The judgment below must be reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.*