## EVERETT FRUIT PRODUCTS CO. v. HOFFMAN et al. *

(Circuit Court of Appeals, Ninth Circuit. March 21, 1927.)

No. 5020.

1. Trial ⊙⇒177—Defendant's motion for directed verdict on specified grounds, joined in by plaintiff, held not waiver of right to jury trial on fact questions.

Where, after defendant moved for directed verdict on specified grounds, plaintiff made similar motion and requested that no question, except measure of damages, be submitted to jury, and on court's granting of plaintiff's motion defendant presented several requested instructions, covering, among other things, an issue of fact on which evidence was conflicting, held, that defendant by its motion did not waive right to have issues of fact go to jury under appropriate instructions.

2. Sales ⊙⇒22(3)—Executory contract for sale of canned pears, "substandard grade, 1924 pack, subject approval of sample," held not binding until buyer approved sample.

Executory contract for sale of canned pears "substandard grade, 1924 pack, subject approval of sample," held not binding until buyer's approval was given, and buyer, on refusing to approve sample, was not entitled to recover damages for seller's breach of contract.

*Rehearing denied May 2, 1927.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; George M. Bourquin, Judge.

Action by Oscar Hoffman and others, copartners doing business under the firm name and style of Hoffman & Greenlee, against the Everett Fruit Products Company. Judgment for plaintiffs, and defendant brings error. Reversed, with directions.

Williams & Davis, of Everett, Wash., and Reames. & Moore, of Seattle, Wash., for plaintiff in error.

Kerr, McCord & Ivey, E. S. McCord, Jr., and Wm. Z. Kerr, all of Seattle, Wash., for defendants in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Judgment below for $2,000 in favor of the plaintiffs, buyers, for the breach of two contracts for the sale of canned pears. Defendant, the seller, brings error.

On August 6, 1924, the defendant, a corporation engaged in the fruit-packing business at Everett, Wash., executed with the plaintiffs, a firm of food brokers in San Francisco, an agreement, in commercial form, for the sale to them of 2,000 cases of canned pears, "substandard grade, 1924 pack," and five days later another identical agreement for the sale of 3,000 cases, a total of 10,000 dozen, size 2¼ cans, all "subject approval of sample." Without dispute it appears that on the market there are six recognized grades of canned pears, "fancy" "choice," "standard," "substandard," "water," and "pie." For the substandard grade it is requisite only that the canning syrup be 10 per cent. sugar, and that the fruit be "tolerably free from blemishes, and tolerably uniform in size, with no size limit of the fruit going into the cans." As throwing some light upon one of the questions, in issue, it is to be noted that in respect to the three higher grades there is a requirement as to color and symmetry, and, further, that the fruit be ripe, yet not mushy; the halves in the fancy grade, free from blemishes, uniform in size, and very symmetrical; in the choice, free from blemishes, uniform in size, and symmetrical; and in the standard, reasonably free from blemishes, reasonably uniform in size, and reasonably symmetrical.

Soon after the execution of the contracts, the California Packing Company, a corporation, became interested, either by taking an assignment from plaintiffs or by a purchase from them of the goods, and as its agent one Longwell went to defendant's packing plant, on or about August 20th, for the purpose of observing the fruit as it was being put into the cans. This was about three days after the run of the pack began. While the witness was somewhat evasive in his answers, it is to be inferred that at that time he declined to approve of such fruit as he saw. Upon a return to the plant on October 9th, for the purpose of further inspection, being advised that the pack was substantially of the same quality as that which he saw in August, he decided not to make further inspection, and informed the defendant that he would not assume the responsibility of accepting the goods, and that the matter would have to be put up to the San Francisco office. In the meantime, early in September, defendant sent to San Francisco several cans of the pack, which, after inspection, the buyers refused to accept. By an officer of the defendant there was also testimony that additional samples were sent to San Francisco the latter part of September, but plaintiffs deny having received or inspected them.

[1] Upon the issue whether the fruit was, in fact, of the substandard grade, the testimony was highly conflicting, as it was also on the question of market value. The court directed the jury to find for the plaintiffs. and submitted only the question of the amount to be recovered. In justification of this course plaintiffs rely upon the rule that, where both parties move for a directed verdict, there is an implied admission that there is no issue of fact and waiver of jury trial. What actually occurred may be briefly stated: Both sides having rested, defendant moved for a directed verdict in its favor, upon the grounds, first, that, the contracts having been assigned to the California Packing Corporation, it was the real and only party in interest; second, that, if there was not an assignment, but only a subsale, the measure of recovery would be the difference between the contract price and the subsale price, and upon that theory there was no evidence of damage; and, third, that by reason of the "subject to approval of sample" clause, the contracts were unilateral and wanting in mutuality. The questions having been argued for defendant, plaintiffs' counsel opened his reply with the statement: "I at this time join in the motion for a directed verdict, and ask your honor to decide the case and not submit to the jury any question except the question of damages."

After brief comment, the court granted

this motion and denied that of defendant. Thereupon counsel for defendant presented to the court seven requested instructions, in part covering the several phases of its motion just referred to, and also the general question whether the fruit was, in fact, of the substandard grade. These requests were all denied. Under the circumstances we think defendant did not by its motion waive its right to have the issues of fact go to the jury under appropriate instructions. Minahan v. Railway Co. (C. C. A.) 138 F. 37; McCormick v. Bank (C. C. A.) 142 F. 132, 6 Ann. Cas. 544 (concurring opinion fully approved in Empire State Cattle Co. v. Atchison, T. & S. F. R. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 431, 15 Ann. Cas. 70; Michigan Copper & Brass Co. v. Chicago Screw Co. (C. C. A.) 269 P. 502; Empire State Cattle Co. v. Railway Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Schmidt v. Bank of Commerce, 234 U. S. 64, 34 S. Ct. 730, 58 L. Ed. 1214; Sampliner v. Motion Picture Patent Co., 264 U. S. 233, 41 S. Ct. 79, 65 L. Ed. 240.

[2] But of more vital importance is a just construction of the underlying contracts. Admittedly they were purely executory, and there was no consideration, unless they imposed mutual obligations. The defendant's position is that by virtue of the clause, "1924 pack, subject approval sample," the instruments were ineffective until and unless such approval was given; that is, approval of sample was in nature of a condition precedent; the obligations were to be binding only upon the happening of a specified occurrence.

In the light of the circumstances in evidence, we are convinced that the instruments should be so construed. The transaction was negotiated through brokers in San Francisco. It related to defendant's pack for 1924, the run of which had not yet begun, and neither party could at that time know what its character would be. While some of the witnesses testified that substandard is an established grade of definite characteristics, the facts admitted by all clearly show that such statements are to be understood in a highly qualified sense, and strictly within the grade packs may have a wide range of diversity. The terms used in specifying the meager requirements are inherently uncertain. The fruit is to be "tolerably uniform in size and tolerably free from blemishes." "Tolerably" has no technical signification, and colloquially its meaning is highly indefinite.

In addition to that consideration, pears necessarily have characteristics other than those referred to in these specifications, that affect their desirability and value on the market. Note the specifications for the three higher grades. Suppose that, upon opening the sample cans at San Francisco and at Everett, the plaintiffs had found fruit which, beyond all question, was tolerably uniform in size and tolerably free from blemishes, and hence of substandard grade, they still might have regarded it as undesirable for their trade, for any one of several reasons. The color might have been poor. While of tolerably uniform size, the size might have been unusually large or unusually small, and for such reason unsuitable for their trade. The fruit might have been overripe, or not ripe enough for their purposes. The halves might have been very greatly wanting in symmetry, and for that reason unattractive. If for any one of these reasons plaintiffs rejected the samples, though admittedly of the requisite grade, they would not necessarily be chargeable with acting capriciously from their standpoint, or in bad faith, for undoubtedly all of these characteristics have a material bearing upon the value and marketability of the fruit.

To a demand by the defendant that they accept a pack tolerably uniform in size and tolerably free from blemishes, and hence of the substandard grade, the plaintiffs could very properly have replied that they had not agreed to buy all species of that grade, but only such species within the grade as they should approve upon inspection of the samples; that the memorandum of purchase was intentionally left conditional, and it was not to be binding upon either party until, by tender and approval of a sample, the subject-matter of the transaction was identified.

If, as contended by plaintiffs, substandard is a grade of fruit of certain and uniform quality and characteristics, there was no need for the approval clause; for upon that theory the rights and duties of both parties were clearly defined and irrevocably fixed by the contract, and could not be affected by an approval or disapproval of the sample. It would be the duty of one to deliver and the other to accept. The clause, it is to be noted, does not merely confer the privilege of inspecting or testing to see whether the article sold complies with the standard fixed by the contract of sale; it conditions the sale.

The case does not, strictly speaking, come within the class of decisions, some of which are cited in the briefs, where one party un-

conditionally agrees to manufacture or furnish a machine or other article, which is to be accepted, if satisfactory to the purchaser. See Parlin & Orendoff Co. v. Greenville (C. C. A.) 127 F. 55; Joliet Bottling Co. v. Joliet Brewing Co., 254 Ill. 215, 98 N. E. 263. Defendant was to furnish the pears from its 1924 substandard pack, provided that, upon being supplied with samples thereof, the purchaser approved. As we have seen, such approval might be honestly withheld, though the samples were of the grade defendant agreed to sell. In other words, by the clause in question the plaintiffs reserved the right to decline to go through with the purchase for considerations which, though reasonable from their standpoint, would nevertheless be beyond the calls of the contract, and hence in excess of the obligations imposed by it upon the defendant; until such approval was given, the sale was incomplete, and the obligations of the contract were in suspense. "In the case of a sale of goods, to be accepted or paid for, if 'satisfactory,' the condition is a suspensory one; that is, it suspends the obligation of both parties until the purchaser's satisfaction is gained or waived. Hence the fact that the goods are not satisfactory does not give him a right to reject them and claim damages for breach of contract of the seller. * .* * " 9 Cyc. 624.

Whether, therefore, we say that the contract was wanting in mutuality until by "approval of sample" plaintiffs' contingent or conditional promise became absolute, or the obligation of both parties was suspended until approval of sample was given, the result is the same. No sample having been approved, no obligation accrued.

Judgment reversed, with directions to the lower court to take further proceedings in harmony herewith.