## BANK OF UNION v. FIDELITY & CASUALTY CO. OF NEW YORK.

### No. 9600.

Circuit Court of Appeals, Eighth Circuit.
Jan. 11, 1933.

F. M. Hemker, of St. Louis, Mo. (W. L. Cole and T. P. Hukriede, both of Union, Mo., on the brief), for appellant.

George A. Hodgman, of St. Louis, Mo., for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellant (herein called the Bank), plaintiff in the trial court, is located at the town of Unoin, Mo. Appellee (herein called the Casualty Company), defendant in the trial court, is a corporation of New York. It issued to the Bank a policy of insurance to protect it against losses sustained by robbery of moneys and securities. On October 28, 1929, the Bank was robbed and certain moneys and securities taken. The Casualty Company paid the money loss, but denied liability as to the securities taken. Action was brought by the Bank in a Missouri state court against the Casualty Company to recover $4,250, the claimed value of the securities alleged to have been taken, and also asking damages for vexatious delay in paying the loss. The case was removed to the United States District Court. After removal the Bank filed an amended petition claiming the securities stolen amounted to $5,813.75. Thereafter the Bank filed a second amended petition, in which it placed the value of the stolen securities at $2,264.91.

At the close of the evidence both parties moved for a directed verdict, at the same time submitting requests for additional instructions in the event the court should not

direct a verdict. Both motions were overruled. The requested instructions were in part given, and the case submitted to the jury, which returned a verdict for the Casualty Company.

The errors assigned which should be considered are: The submission of the case to the jury after both plaintiff and defendant had moved for a directed verdict; failure of the court to sustain the motion of plaintiff for a directed verdict.

Ordinarily, where both parties move for a directed verdict without reservations, it amounts to a waiver of a jury trial, and a submission to the court of questions of fact as well as of law. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038. But, where a party makes such motion, and at the same time requests instructions to the jury which show he does not intend to waive his right to jury trial if his motion is overruled, he cannot be held to have waived a trial by jury of the fact questions. This court apparently held otherwise in Empire State Cattle Co. et al. v. Atchison, T. & S. F. R. Co. (C. C. A. 8) 147 F. 457. While Judge Sanborn concurred in the result, he disagreed with the majority as to the effect of requesting instructions to the jury at the time of making the motion to instruct a verdict, saying at page 462 of 147 F.: "The series of requested instructions to the jury which generally accompanies a request for a directed verdict has no other office but to indicate that the party who presents them does not waive his right to a trial by jury, but insists upon it if his request for a directed verdict is denied, and if they do not have this effect, they are without meaning, purpose or effect. * * * In my opinion, the right to a submission to the jury of every question of fact upon which the evidence is not so conclusive that a verdict but one way could be sustained, is waived only when a request or motion for a directed verdict, without other requests, is made by each party, and it is expressly reserved and demanded by presenting, with a request for a directed verdict, requests for other instructions to the jury respecting the issues of fact in the case."

Upon appeal of this case to the Supreme Court (210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70), it sustained the position taken by Judge Sanborn. The court said at page 8 of 210 U. S., 28 S. Ct. 607, 609: "It was settled in Beuttell v. Magone, supra, that where both parties request a peremptory instruction and do nothing more, they thereby assume the facts to be undisputed, and, in effect, submit to the trial judge the determination of the inferences proper to be drawn from them. But nothing in that ruling sustains the view that a party may not request a peremptory instruction, and yet, upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting, or the inferences to be drawn from the testimony are divergent." This would seem to settle the question. See, also, Minahan v. Grand Trunk Western R. Co. (C. C. A.) 138 F. 37; Sampliner v. Motion Picture Patents Company, 254 U. S. 233, 41 S. Ct. 79, 65 L. Ed. 240. While the instructions requested by both parties at the time of making motions for directed verdicts do not appear in the record, the trial court in passing on the motion for a new trial filed a memorandum in which he stated: "It is true that at the close of all the testimony both parties moved for a directed verdict. Neither party indicated an intention of standing on its motion, but, on the contrary, each party, at the same time, submitted requests for additional instructions in the event the Court should not direct a verdict. Both motions for a directed verdict were overruled, the requested instructions given, in part, and the case was submitted to the jury." It is clear that under these circumstances the jury was not waived.

Appellant's motion for an instructed verdict was: "At the conclusion of all the evidence, the Court instructs the jury that under the law and the evidence your verdict must be for the plaintiff."

Appellee insists that this motion is not specific enough to raise any question as to the sufficiency of the evidence, and relies on Wharton v. Ætna Life Ins. Co. (C. C. A. 8) 48 F.(2d) 37. The motion in that case was limited to one issue, i. e., Did the insured make material misrepresentation in answering an interrogatory? and this court held that the motion could not be construed to embrace all possible grounds upon which it might be supported.

In Mansfield Hardwood Lumber Co. v. Horton (C. C. A. 8) 32 F.(2d) 851, this court held that a general motion to direct a verdict was not sufficient to raise the question of whether there was substantial evidence to support a verdict. In Ozark Pipe Line Corporation v. Decker (C. C. A. 8) 32 F.(2d) 66, 67, where the same judges sat as in the Mansfield Hardwood Lumber Co.

Case, supra, this court held that a requested declaration (a jury being there waived), as follows: "The court declares the law to be that under the pleadings and evidence in this case, the plaintiff is not entitled to recover against the Ozark Pipe Line Corporation, and the decision and judgment of the court is in favor of the defendant," was sufficient to save for consideration by this court the question of sufficiency of the evidence.

In United States v. Schweppe (C. C. A. 8) 38 F.(2d) 595, 596, we held that the motion made at the close of all the evidence by the defendant, "to instruct the jury that under the pleadings, the law and the evidence, its verdict must be for the defendant," was sufficient to preserve for consideration the question of substantial evidence upon which a jury could base a verdict. The instruction here requested by plaintiff Bank is only slightly different from that in the Schweppe Case; the only difference being that it does not refer to the pleadings. We think it was sufficient.

This brings us to the real issue in the case, viz., should the trial court have instructed a verdict for plaintiff upon its motion at the close of all the evidence.

We need not set out in full the terms of the policy, as the controversy arises entirely by reason of one of its conditions, as follows: "B. The Company shall not be liable: * * * (2) Unless the records of the Assured have been so kept that the amount of loss can be accurately determined therefrom by the Company."

No other question concerning the policy arises.

The Bank submitted to the Casualty Company three proofs of loss, the last two being supplemental to the original proof, as it was discovered additional bonds had been stolen. Simplifying the various proofs, the claims sued for cover five items of government bonds alleged to have been stolen, which may be grouped as follows:

| | |
|---|---|
| Mudgett bonds | $300.00 |
| Knehans bonds | 350.00 |
| Froshaug bonds | 500.00 |
| Wright bonds | 400.00 |
| Bell bonds | 714.91 |

The first proof of loss covered the first three items, the second proof the fourth item, and the last proof the fifth item.

No question is raised that these bonds come within the protective terms of the policy. There is some suggestion in the argument of appellee that the Bank did not in fact have the bonds at the time of the robbery because the parties who owned the same and who lived in that vicinity were not called upon as witnesses to prove that they were in the hands of the Bank. This is not pleaded as a defense, however, and cannot be raised on this appeal.

Appellant insists that appellee in its answer concedes the value of the bonds stolen. The answer does not contain a general denial, nor does it contain any direct statement that the securities, the value of which is sought to be recovered, were actually taken from appellant Bank, but in its language, which is not clear, we think it does inferentially concede that the securities, for the value of which the Bank sues, were taken at the time of the robbery.

The burden was therefore not upon appellant to prove that the securities were actually taken from the Bank, but it did have the burden to show their value and it attempted so to do. The question of the burden of proof is not however, we think, very material in this case. The only question which the court submitted to the jury as a question of fact was whether the records of the assured were so kept that the amount of the loss sustained, if any, could be accurately determined therefrom by the Company. The court said: "The policy provides, among other things, that the defendant company shall not be liable to the plaintiff bank unless the records of the assured, in this case the plaintiff Bank of Union, have been so kept that the amount of loss sustained, if any, can be accurately determined therefrom by the Company. The condition is binding upon the parties, and if you find and believe from the evidence that the records of the Bank have been so kept that the amount of any loss they have sued for cannot be accurately determined therefrom by the defendant company, then if you find those to be the facts, your verdict should be in favor of the defendant."

A substantial compliance with the terms of the policy was all that was necessary. There was no particular method of keeping a record required. New Amsterdam Casualty Co. v. Iowa State Bank (C. C. A. 8) 1 F. (2d) 196; Ætna Casualty & Surety Co. v. Reliable Auto Tire Co. (C. C. A. 8) 58 F. (2d) 100.

Only one witness testified to anything of importance. That was Mr. Allersmeyer, President of appellant Bank. He testified at

length, and his testimony was to the general effect that the Bank kept customers' securities for safe-keeping; that, when any of such securities were received, the practice was to prepare a duplicate receipt on a deposit slip, a copy of which was given to the customer and the other copy pinned to the security. The security then, with the receipt attached, was placed in a leather note case containing thirteen pockets with letters alphabetically arranged. Each year he prepared a list of all the securities held for safe-keeping by adding the amount thereof on adding machine paper and writing alongside the amount, the number, and name of the person for whom the security was held, and this list was headed "bonds." When a bond was withdrawn, the item was stricken from the list. When other bonds were deposited the additions were inserted.

As to the Mudgett bonds, hereinbefore referred to, no receipt had been issued therefor. Allersmeyer had written to Mudgett (guardian) advising him that the Bank held the bonds, and a duplicate of the letter was pinned to the bonds, which was stolen when the bonds were stolen. No receipt was given for the Knehans bonds. As to the other bonds, receipts were given. These outstanding receipts and letters, and the slips prepared by Allersmeyer, were all the Bank had which would prove that the bonds were held for safe-keeping, and from which the loss could be determined. The paper slip that Mr. Allersmeyer testified he made every year, and which was kept with the securities, was not made a part of any of the official records of the Bank. There were no records of the Bank showing what receipts the Bank had outstanding for the securities which it held for safe-keeping. There was no record to show what receipts had been turned back or what securities delivered back to the owners. We set forth from Allersmeyer's cross-examination the following:

"All the banking transactions of every kind and character we had in permanently bound records, except the bonds we held for safe-keeping. We did not carry bonds held for safe-keeping on our balance sheet. Every other item of assets and liabilities and every other item of transactions were kept in the form of a permanent record for the bank. * * *

"I can take the books that I have here now and tell you the bonds that we had at the time of the robbery on the transactions handled through the Bank. * * *

"When I made the first claim I did not know of any other bonds that were outstanding or any receipts that were outstanding that would give a basis for the additional bonds. I learned about the additional bonds by the parties coming in and showing me the receipts or telling me about it. If a valid receipt signed by the Bank or by me for the Bank should now be presented by some other person and a demand made for the bond covered by that receipt I could tell whether the owner had it coming to him. If there were any additional receipts outstanding they would be proper claims against the Bank. If it would (correspondent) with my record of the list I would have to admit it. The list was just made once a year, but it was corrected every time a change was made."

The system, therefore, which the Bank used in handling these securities left for safe-keeping clearly appears, and the only thing that might be termed a record of such securities was the adding machine list which Allersmeyer made every year. Every bond which the Bank owned was entered in a permanent record, and every financial transaction carried on by the Bank was kept in some record, except the transactions as to the securities held for safe-keeping.

The only witness beside Mr. Allersmeyer for the plaintiff was Mr. Hemker, who testified to the value of the bonds, and the only evidence introduced by appellee was the three different petitions filed by appellant in the state and federal courts. Appellant insists that under the doctrine of Chesapeake & Ohio R. Co. v. Martin, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983, the court should have instructed a verdict for it, as the evidence was clear and undisputed; that the jury could not disregard the testimony of Mr. Allersmeyer. There is no question that a jury cannot disregard testimony that is not open to doubt and from which different inferences cannot be drawn, but the rule is quite different where the inferences to be drawn from undisputed evidence may be a matter of dispute. The test is really whether reasonable men might fairly reach different conclusions from the inferences to be drawn from the facts.

In Wisconsin & Arkansas Lumber Co. v. Day (C. C. A. 8) 35 F.(2d) 563, 566, Judge Munger, speaking for this court, said: "If different inferences may reasonably be drawn from those facts, the question is for the jury." Kladivo v. Melberg, 210 Iowa, 306, 227 N. W. 833; Mutual Life Ins. Co.

v. Hatten (C. C. A. 8) 17 F.(2d) 889; Lumbermen's Mut. Ins. Co. v. Johnson Lumber Co. (C. C. A. 5) 53 F.(2d) 940; Self et al. v. New York Life Ins. Co. (C. C. A. 8) 56 F.(2d) 364; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720. If this court could say that the only inference that could be drawn from the testimony of Mr. Allersmeyer was that the records of appellant had been so kept that the amount of the loss could be accurately determined therefrom by the Casualty Company, it would be our duty to hold that the court erred in not sustaining the motion of plaintiff for a directed verdict, but we do not feel that abiding certainty that we should in order to so hold. True, Mr. Allersmeyer testified he could take the books of the Bank and tell the bonds that it had at the time of the robbery on the transactions handled through the Bank. However, it appears that the Bank had difficulty in finding out exactly the bonds that were stolen, and was compelled to make two additional proofs of loss as the loss of additional bonds was discovered. The question was not whether the Bank officials by going through their books and tracing out transactions might eventually ascertain the bonds stolen, but whether the records had been so kept that the amount of the loss could be accurately determined therefrom by the Casualty Company. As to this one person might honestly believe that the slips were sufficient records from which the loss could be determined; another might think that slips kept with the bonds which, if the bonds were stolen, would in all probability also be stolen, as they were here, was not keeping such records as was intended by the policy. We merely suggest these instances as showing that different inferences could be drawn from the testimony, and therefore the question was properly for the jury. The instructions of the court were clear; no exception thereto was taken on the part of the Bank to anything but the withdrawal of the question of vexatious refusal to pay and claims for attorney's fees. Counsel for appellant suggests in argument that verdict should have been instructed for plaintiff Bank because the amount of the loss is not questioned, and therefore a failure to keep records is no defense. We do not so understand the record. The amount of the loss was not admitted by the Casualty Company.

We are satisfied the court did not err in overruling plaintiff's motion for a directed verdict and in submitting the case to the jury.

Affirmed.