## GENERAL TIRE CO. OF MINNEAPOLIS v. STANDARD ACC. INS. CO.

### No. 9576.

Circuit Court of Appeals, Eighth Circuit.

May 6, 1933.

Rehearing Denied June 12, 1933.

Thomas Gallagher, of Minneapolis, Minn., for appellant.

George Hoke, of Minneapolis, Minn. (George D. McClintock and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

August 10, 1930, appellant was the owner of four Ford trucks, in the city of Minneapolis, Minn., which were insured by appellee against damages to persons and property. The classification made and premiums charged are thus stated in the policy:

### Schedule

| Location | Name | Factory Number | Year Model | No. Type of Body | Premiums Liab. | P.D. |
|---|---|---|---|---|---|---|
| The following cars to be used as service cars for first aid to disabled automobiles and towing of same: | | | | | | |
| Minneapolis, Minnesota | Ford | 988227 | 1929 | A ¾ Ton | 75.60 | 45.00 |
| Minneapolis, Minnesota | Ford | 1239941 | 1929 | A ¾ Ton | 75.60 | 45.00 |
| The following cars to be used for commercial purposes, excluding service car use and towing: | | | | | | |
| Minneapolis, Minnesota | Ford | 1207421 | 1929 | A ¾ Ton | 50.40 | 27.00 |
| Minneapolis, Minnesota | Ford | 1269112 | 1929 | A ½ Ton | 50.40 | 27.00 |
| (Roadster Box Attached) | | | | Total | $252.00 | $144.00 |

Paragraph VIII of the policy provided that the appellee company should not be lia-

ble for accidents occurring while such automobiles are "used for any purpose other than specified."

Truck No. 1,269,112, scheduled at the lower premium rate to be used only for commercial purposes, excluding service car use and towing, was mounted with a large ninety-gallon air tank on the box in the back of the cab, and, by lettering, was designated as a "fleet tender." Its principal use was for "checking air and inflating tires on various fleet accounts." "We (appellant) gave service to the fleets of trucks equipped with our tires." Appellant at this time had what may reasonably be termed a service arrangement with the Franklin Creamery Company. As stated by the witness Ludwig, service manager of appellant, "we sold the Franklin Creamery tires and did their repair work. We had some spare tires at our place for some of the Franklin Creamery trucks, and we went out and changed if there happened to be a flat tire." As stated by the witness Nelson, garage foreman for the Franklin Company, "the General Tire Company had charge of the repairing end of it for the entire fleet."

August 10, 1930, the witness Reagan, employee of the appellant, was "taking care of sales and catching service calls that came through. On that day (Sunday) about lunch time I received a long distance call from one of the truck drivers of the Franklin Creamery Company at Elk River, Minnesota. He ordered a new tire and tube, and requested that they be mounted on his spare wheel that we had there in the shop, and then brought out to Elk River to his truck which was evidently on its route there. * * *

"I took this order back to Johnson, the man in the service department, an employee of plaintiff, who was working that day, showed it to him and told him about the delivery he was to make."

Johnson selected the truck in question because it was "gassed up and ready to go." He first looked at the others and found they had no gasoline and were not ready. It is apparent from his testimony that this was regarded as a service trip and that he would have taken one of the other cars, if it had been available, for that reason. On his way back from Elk River, Johnson had an accident, involving two other cars, and resulting in personal injuries and property damage. One car is described as the Gallagher car with five occupants, three named Gallagher, one named Theis, and one Bergin. In the other car were Mrs. Olson, and her son and daughter. Claims for damages were made by the occupants of both cars. This accident was duly reported to the insurance company August 11, 1930. On the same day Clarence A. Stark, an adjuster for the company, was directed by the head of the claim department to "hustle out and settle the Gallagher claims because they were threatening suit." On the night of August 14, 1930, Stark made settlements with all the people in the Gallagher car, issuing checks therefor. At this time he knew the use to which the truck was put, but did not actually know of the restriction in the policy. He learned this several days later and then demanded from appellant payment to cover the checks he had issued in these settlements, stating that the truck in question was not covered by the policy, and that the insurance company would assume no responsibility in the premises. Appellant finally reimbursed the insurance company for these payments and was furnished the Gallagher releases taken by Stark. Meantime, the Olsons had filed suits against appellant in the sum of $20,000, and appellant was compelled to defend these suits because of the refusal of appellee to do so. One of the Gallaghers testified in these actions that her claim, arising from the same accident, had been settled by appellant. Substantial judgments were returned against and paid by appellant. To recover for the damages thus sustained appellant brought suit against appellee in the state court, which action was removed to the District Court for the District of Minnesota, because of diversity of citizenship.

At the conclusion of the evidence both parties moved for directed verdicts. The following colloquy then took place:

"The Court: Well, gentlemen, you both have asked for directed verdicts and that leaves the matter to the disposition of the Court. I will take the matter under advisement and submit a decision. Ladies and gentlemen of the jury, the case has now reached a position where the testimony is all closed and both parties contend that they are entitled to a directed verdict as a matter of law, and that simply leaves the matter for the Court to decide owing to the fact that the parties both waive their right to a jury decision, and the Court will take this matter under advisement and make suitable findings of fact and conclusions of law.

"Mr. Gallagher: (Counsel for plaintiff-appellant) I perhaps did not understand the correct practice in this court. I had in mind that if my motion were denied that I would still have the right to have the questions of fact submitted to the jury. I wish to with-

draw the motion and have all the facts in issue submitted to the jury.

"The Court: No, I think I will leave the motions just as they are. I will excuse the jury from any further consideration of this case and they can report to Judge Molyneaux on Monday A. M. at 10 o'clock.

"Mr. Gallagher: Exception. (Jury leaves the courtroom.)

"The Court: Ordinarily if it appeared that counsel had inadvertently deprived himself of the right to have his case go to the jury by making a motion for a directed verdict, I would be inclined to relieve him from the consequences of such inadvertence. But in this case it is so clear to me that the vital controlling issues are practically questions of law, that. I feel that this is a matter for the Court and that the jury should be excused.

"Mr. Gallagher: Exception."

The court found the issues for appellee. From the resulting judgment this appeal is taken.

The first contention is that the court erred in refusing to allow plaintiff-appellant to withdraw its motion for a directed verdict. The general rule in federal jurisdictions is that, where each party to an action requests a directed verdict in his favor, and does nothing more, the parties will be held to have waived a trial by jury and to have constituted the court a trier of both law and fact. Hover & Co. v. Denver & R. G. W. R. Co. (C. C. A. 8) 17 F.(2d) 881; Bank v. Fidelity & Casualty Co. (C. C. A. 8) 62 F.(2d) 1040. But this rule is subject to modification and exception where the facts warrant. It is well settled that where the request for directed verdict is coupled with a reserved right to submit further requests for instructions, if that for a directed verdict is refused, no waiver of trial by jury results. Hover & Co. v. Denver & R. G. W. R. Co., supra; Bank v. Fidelity & Casualty Co., supra; Empire State Cattle Co. v. A. T. & S. F. Ry. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Sampliner v. Motion Picture Patents Co., 254 U. S. 233, 41 S. Ct. 79, 65 L. Ed. 240.

The question, then, is whether the request to withdraw the motion for a directed verdict was timely. We think it was. No doubt the proper and usual practice is to couple the request for a directed verdict with a reservation, in some form, contingent upon the overruling of that motion; but timely statements by counsel "made it sufficiently plain that, while he sought an instructed verdict, he also requested to go to the jury if the court held a contrary view concerning the evidence." In this respect the case does not differ materially from Sampliner v. Motion Picture Patents Co., supra. If the court had already ruled upon the motion, or had indicated what its decision would be, or if, before either of such actions had been taken, the jury had been discharged, and had mingled with the remainder of the panel, the withdrawal would probably have come too late. But here no action had been taken which could alter the situation of the parties. The court had neither made nor indicated any ruling. The jury was still in the box. We think under such circumstances appellant was entitled to withdraw his motion. The trial court, as its language indicates, was evidently of the same opinion; but conceived that the "vital controlling issues" were "practically questions of law," and refused the request to withdraw for that reason. However, although taking the case from the jury was erroneous, nevertheless "the verdict will be sustained if the evidence was of such a conclusive character that it would have been the duty of the court to set aside the verdict had it been for the other party." Empire State Cattle Co. v. A. T. & S. F. Ry. Co., supra.

Our first inquiry then is whether the truck in question was covered by the policy of insurance when the accident occurred. From the facts in evidence, as hereinabove stated, it is our opinion that the truck, on this occasion, at least, was being used for a purpose other than that specified in its policy classification, and, for that reason, was not covered by the policy. This view is further supported by the action of appellant while its claim against appellee was pending. A clause in the policy provided that if, during the term of the policy, the assured changes the operation of an automobile it may be placed upon a pro rata premium basis for the balance of the policy period. Accordingly, on August 26, 1930, appellant wrote appellee as follows:

"Standard Accident Ins. Co. of Detroit, Mich. c/o Fred L. Gray Company 332 Security Building Minneapolis, Minnesota.

"Gentlemen: As of August, 9th, 1930, we have placed a Ford Truck, # 1269112, Model A, 1929, in use as a service car.

"We have given you this notice thereof in accordance with the terms of endorsement #109583 on your policy #JC1287545. Kindly advise us as to additional premium thereon, and we will immediately forward you check to cover."

Appellee declined to antedate this indorsement to August 9th "after an accident has occurred," to wit, on August 10th. We think this letter was a damaging admission on the part of the tire company that the truck in question was being used in service when the accident occurred. However, we think appellee is estopped to deny its liability because of its action in taking exclusive charge of the defense of these claims for personal injuries and property damages with appellant's consent. Employers' Liability Assurance Corp. v. Chicago & Big Muddy Coal & Coke Co. (C. C. A. 7) 141 F. 962; Empire State Surety Co. v. Pacific Nat. Lumber Co. (C. C. A. 9) 200 F. 224. It is true that this, ordinarily, must be done with knowledge of the defect, if any, in the claim of coverage; and, if the insurer undertakes such control with a timely reservation that it will disclaim liability if certain facts, not then definitely known, are ultimately established, it may, upon timely notice, escape the charge of waiver and estoppel. Meyers v. Continental Casualty Co. (C. C. A. 8) 12 F.(2d) 52. But this case does not present such a situation. Adjuster Stark, acting under explicit instructions from his superiors, proceeded to take exclusive charge of the claims for damages, and settled those presented by occupants of the Gallagher car. His explanation is that at that time he knew that the truck in question was being used as a service car when the accident occurred, but did not know that the policy restricted its use to commercial purposes only. But under the circumstances of the case he is charged with knowledge of that restriction. Naturally the company and its agents, in assuming to act, must know the provisions of the policies which govern the transaction, especially if those policies are reasonably accessible. This policy was readily obtainable, and was subsequently obtained, from the underwriting department of appellee, just across the hall from the claim department.

"If the company ought to have known of the facts, or, with proper attention to its own business, would have been apprised of them, it has no right to set up its ignorance as an excuse." Knights of Pythias v. Kalinski, 163 U. S. 289, 298, 16 S. Ct. 1047, 1051, 41 L. Ed. 163.

Where, as here, the insurer, without reservation and with knowledge actual or presumed, assumes exclusive control of the defense of claims against the insured, it cannot thereafter withdraw and deny liability under the policy. And in such case the insured need not show that it was prejudiced by such conduct.

"Where the insurer with actual or constructive knowledge of the fact recognizes a liability as covered by the policy and proceeds to act thereunder according to its terms, as by assuming control of the defense of the action against insured, without notifying him that it would claim its exemptions under the policy, it will be conclusively presumed in an action on the policy that insured was prejudiced by such conduct and need not show such fact in order to estop the company from claiming that the liability was not within the terms of the policy." Corpus Juris, Vol. 36, par. 125, p. 1127.

Furthermore, it sufficiently appears that appellant sustained injury because of the action taken by the adjuster. His settlement with the occupants of the Gallagher car was viewed as an admission of liability, and in the Olson suit, which appellant was compelled to defend because of the refusal of appellee so to do, evidence of the Gallagher settlement was received and was obviously prejudicial. The judgment below is reversed and the case remanded for further proceedings not inconsistent with this opinion.