**UNION INDEMNITY CO. et al. v. UNITED STATES for Use of PAGE ENGINEERING CO.**

No. 6510.

Circuit Court of Appeals, Sixth Circuit.

Jan. 11, 1935.

Lowell W. Taylor, of Memphis, Tenn., for appellants.

Walter Chandler, J. H. Shepherd, W. L. Owen, and A. L. Heiskell, all of Memphis, Tenn., for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Sweet-Price Dredging Corporation contracted with the United States in June, 1929, to build five miles of levee in the Reelfoot (levee) district in Tennessee and Kentucky. The Union Indemnity Company executed the public work bond as required by title 40, § 270, U. S. C. (40 USCA § 270). The original suit was brought under the Hurd Act (title 40, § 270, U. S. C., 40 USCA § 270) against the dredging corporation, and appellant as surety, on behalf of the Harnischfeger Sales Corporation and all creditors of the corporation.

Page Engineering Company, appellee, filed an intervening petition asserting its claim against the dredging corporation in the sum of $7,000, for the rental of a "drag line" machine, together with $447.85 for repairs thereon and $816 freight paid on shipping the drag line from its place of use in Kentucky.

In addition to other defenses, not here relevant, appellant pleaded (1) accord and satisfaction; and (2) that, because of defects in its construction and design, the drag line failed to perform the work for which it was leased. Both parties moved for a directed verdict, but appellant reserved the right to have the jury pass on all disputed questions of fact. The court sustained appellee's motion, denied that of appellant, declined to submit any question to the jury, and rendered judgment against appellant.

Appellant's motion was made upon two grounds: First, that the evidence clearly established that the rental and costs of repairs for the drag line were in dispute and that appellee had accepted $6,000 in full and complete payment and satisfaction therefor; and, second, that the drag line, guaranteed by appellee as to design, workmanship, and material, proved unfit for the work for which it was intended.

After the execution of the bond upon June 20, 1929, the dredging corporation proceeded with its contract, but in November it ran out of funds, and appellant, surety, was forced to advance large sums to enable it to go on with the job. A freeze occurred in December, and a number of machines, including Page drag lines other than the one about which this litigation centers, were disabled. O. O. Ogden, a subcontractor, was also using a Page drag

line which froze and became damaged. Orders were sent immediately to appellee by wire to ship repair parts, which appellee refused to do even for cash, unless appellant would guarantee its past-due accounts (for parts) of approximately $12,000. At first appellant was disinclined to make the guaranty; but on December 24, 1929, in order to protect itself, as surety, against overhead expenses of the dredging corporation, which were then running over $100,000 monthly, and to obtain immediate shipment of the parts, Mr. Taylor, representing appellant, telephoned Mr. Page, representing appellee, that appellant would guarantee the past-due accounts. In the conversation Mr. Taylor said: "Now, Mr. Page, you have got an experimental machine on that job, that crawler machine which was sent down, as I understand, as an experiment, and has utterly failed to work, and has been abandoned on the work, and I do not regard that as any legal claim at all, and we will not guarantee to you any amount for that, because, as we understand, it is an utter failure and has been abandoned."

To which Mr. Page replied: "All right, you guarantee the $12,000.00, and I will work that thing out; I will look to Sweet —maybe I can get it out of Sweet." (Sweet was the president of the dredging corporation.)

Mr. Taylor testified that he told Mr. Page there would probably be some way he could tell him how he (Page) could get some money out of Sweet if he could establish the crawler (drag line) account, but that appellant was not interested in it and would have nothing to do with it.

On the next day Taylor wired appellee as follows: "In consideration your immediately shipping parts now needed and hereafter ordered on Sweet-Price Dredging Corporation Reelfoot Contract Union Indemnity Company will guarantee payment to you upon completion of this contract of past due account up to Twelve Thousand Dollars Stop *All rentals and charges for parts on experimental machine are excluded from this guaranty.*" (Italics ours.)

Upon receipt of this message, appellee shipped the repair parts, not only for the Page drag lines operated by the dredging corporation, but also for the Ogden drag line, and wrote Mr. Taylor, quoting his telegram and advising him of the shipment. Nothing further occurred until April 16, 1930, when appellee wrote Mr. Taylor that the current account for parts since December 26, 1929, the date of the guaranty, amounted to about $4,000, and wanted to know if appellant was going to pay it. After extended negotiations, appellant so agreed, and did finally pay, not only the current account of $4,000, but all its other current bills thereafter accruing. Later appellant sent appellee a check for $6,000 as an advance upon its guaranty of December 26, and thereafter, on March 21, 1931, a draft for $6,000 was drawn by appellant to the order of appellee bearing the following notation: "In full and complete payment and satisfaction of all claims which the Page Engineering Co. may have against the Union Indemnity Co., by reason of any and all credit extended by Page Engineering Company to Sweet Price Dredging Corporation. Assured U. S. A."

The draft was forwarded on March 23, and on the next day Mr. Taylor received the following wire from counsel for appellant: "Check received in payment balance Page Sweet Price guaranteed account, but satisfaction recital in check unlimited Stop Wire authorization to add following words quote under guarantee by Union Indemnity Company."

To which he responded by letter as follows:

"I received your wire when I returned to the office late this afternoon.

"I would have no authority to authorize you to change the wording of the draft. As I understand it, the Union Indemnity Company is paying the Page Engineering Company this additional $6000.00 in full of its liability and I am certain that it would not be willing to make the payment if the Page Engineering Company were insisting upon and reserving other claims against it."

Notwithstanding this letter, appellee indorsed the draft beneath the following superscription: "The Payee's endorsement constitutes an acceptance of this draft in full settlement of liability stated on the reverse side."

The draft was paid to appellee.

We do not think appellant was entitled to a directed verdict upon the ground of accord and satisfaction. On the other hand, we think the direction for appellee was wrong. An "accord" implies a disputed claim and an agreement to settle it, supported by a sufficient consideration. The acceptance and payment of the draft did

not, as a matter of law, entitle appellant to a directed verdict. The amount of the draft was concededly due upon appellant's guaranty, but its payment was not per se consideration for the release of appellant from its obligation upon the public work bond for the rental of and repairs to the drag line. Matlack Coal & Iron Corp. v. N. Y. Quebracho Extract Co., 30 F.(2d) 275, 276 (C. C. A. 2); Jefferson-Standard Life Ins. Co. v. Lightsey, 49 F.(2d) 586, 589 (C. C. A. 4).

Appellant's primary obligation under its guaranty was distinct from its secondary obligation upon the bond. Whether the acceptance of the draft absolved appellant from liability upon the bond depended upon the intention of the parties (Fire Ins. Ass'n v. Wickham, 141 U. S. 564, 579, 12 S. Ct. 84, 35 L. Ed. 860; Matlack Coal & Iron Corp. v. N. Y. Quebracho Extract Co., supra; Jefferson Standard Life Ins. Co. v. Lightsey, supra), a question of fact which appellant upon its request was entitled to have submitted to the jury (Sampliner v. Motion Picture Patents Co., 254 U. S. 233, 41 S. Ct. 79, 65 L. Ed. 240). And, for the purpose of determining the intention of the parties, we think that the telegram of March 23 from appellee's counsel and the response thereto (both of which were excluded by the court) were relevant and should have been admitted.

There was a bona fide dispute over the question whether appellant was liable for rental of the drag line. Appellant's claim was that the drag line was not worthy of its hire. A jury might reasonably infer, from the telephone conversation between Mr. Taylor and Mr. Page and the subsequent developments, that appellant's guaranty was made, not only in consideration of the prompt shipment of repair parts, but in further consideration of its release from liability as surety for rentals and repairs to the drag line. Upon such finding of the jury judgment would follow in favor of appellant, but a contrary finding would leave open for determination the second question; i. e., whether the drag line was unfit for the work for which it was designed.

We think the court erred in declining to submit this question to the jury. There was substantial evidence to support appellant's contention. It tended to show that the drag line was of unusual design. It was mounted upon two sets of "cats" (caterpillars), the main set, which was hooked to the drive shaft; and an auxiliary set on the outside, so mounted that its treads were about six inches above the ground when the main set was on solid earth. The auxiliary set was not geared to the drive shaft, and was designed to support the drag line and permit its tilting when it was swung crosswise. The main cats were set closer together than in the usual design, so that the machine could be transported on railroad cars without the necessity of dismantling it. The result was that, when the machine was at work in soft earth, it sank down and was supported by the auxiliary set, and, since they were not drivers, the power set either spun and dug the earth out under it, or something broke.

There was evidence tending to show that the machine had a number of breakdowns and was entirely abandoned before the levee was completed and while the emergency for which it had been leased still existed and that two other machines were substituted in its place.

For the errors indicated, the judgment is reversed, and the case remanded for a new trial.