**UNITED STATES of America for the Use and Benefit of PRATT FARNSWORTH, INC., Plaintiff,**

v.

**Dennis J. TALLEY, d/b/a Dennis Construction Company and/or D. J. Talley Company and Great American Insurance Company, Defendants.**

**Civ. A. No. 67–706.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 22, 1969.

Marian Mayer Berkett, New Orleans, La., for plaintiff.

Sydney J. Parlongue, New Orleans, La., for defendants.

**1346**

RUBIN, District Judge:

On or about November 7, 1966, Dennis J. Talley, President of Dennis Construction Corporation, telephoned the plaintiff's office to inquire about the rental of a Koehring 605 Crane. As a result of this conversation with Pratt Farnsworth, plaintiff's president, and a later one between them, the rental was arranged. The rate was to be $600 a week, but if the lessee kept the equipment for four weeks, he would be charged only $1,800 and the final week would be "free." The lessee would be required to use an operator and oiler provided by the lessor to operate the equipment.

Both Talley and Farnsworth were busy. It is doubtful that they spelled out all the details of their deal. Farnsworth thought the rental quoted was to be paid for the equipment only and that the wages of the operator ($36.80 per day) and the oiler ($25.32 per day) were to be added. If Talley had stopped to think, he would have realized that this was necessarily so. Otherwise, if he kept the equipment a month, the wages paid the operator and oiler would amount to $1,242.40 (plus insurance and social security), and the net rental on the equipment would be only $557.60, a manifestly insufficient amount.[1]

As a result of clerical mistake, however, the plaintiff sent the defendant an invoice—No. 313—dated December 12, 1966, full of errors. It billed the lessee only for rental, not for the wages of the operator and oiler; the bill was for the wrong number of days and failed to include some items, such as mats, that the lessor contended were furnished for an additional $108, plus $140 for hauling to and from the job site.

When the mistakes were found by the plaintiff, a new invoice—No. 314—was promptly sent. It included three separate items:

(1) Rental of the dragline (excluding transportation). $1,800.00

(2) Rental of mats, including transportation. 248.00

(3) Wages of operator and oiler. 1,503.30

The invoice was dated December 14, 1966. There was testimony that it was mailed. The defendant testified that he didn't receive it.

At any rate on January 10, 1967, the defendant mailed the plaintiff a check for $1,960.00 on which he wrote: "Machine rental In Full Michoud Job." It was sent with a letter of transmittal that said, in part, "Enclosed is our check for rental of your machine *as per Invoice No. 313*, with the following changes due to your errors * * *." (Emphasis supplied). The plaintiff deposited the check but insists that it is still due $248.00 for rental of the mats and $1,503.30 for the operators' salaries.

Although the defendant never agreed expressly to pay the wages of the operator and oiler, the evidence convinces me that this was a term of the contract and that the defendant understood it and consented to it. Indeed the defendant does not seriously question that the weekly-monthly rental rate quoted for the equipment did not include the wages of the operator and oiler, but relies solely on the defenses that, by cashing the check, the plaintiff effected an accord and satisfaction or that it thereby estopped itself from asserting its original claim.

■■ Under federal law, which applies here, since this is a Miller Act claim,[2] the acceptance of a payment

---

1. Later defendant found that its equipment was inadequate to move the crane. Plaintiff hauled the crane to and from the job site and charged the defendant $160, an amount which is not in dispute.

2. Jurisdiction in the instant case is based on the Miller Act, 40 U.S.C. § 270a. As surety for Dennis Construction Company, Great American Insurance Company is being sued on its payment bond. Dennis Construction Corporation was engaged in construction work on NASA's Michoud Facility, under a subcontract with Mason-Rust. Counsel have relied primarily on

tendered as being in full satisfaction of a disputed and unliquidated claim estops a claimant from thereafter seeking further payment.[3] Here, however, the claim was not unliquidated, and the letter of transmittal creates doubt that the check was tendered in full payment of all sums claimed. The letter indicates that the check was tendered only as being in full payment of Invoice 313. The letter did not even discuss the additional item of operator's and oiler's wages set forth in Invoice 314, and therefore the acceptance of the check neither constituted accord and satisfaction of those items, nor did it estop the plaintiff from asserting those claims, for the defendant was not misled to his detriment.

In addition, there is no doubt that the equipment rental quoted the defendant was fair and that the plaintiff would, in any event, be entitled to recover that sum plus the operator"s and oiler's wages on a quantum meruit basis.

■ With respect to the amount claimed for mat rental and hauling, this was a disputed item and it was shown on Invoice 313. The jurisprudence compels us to hold that the acceptance of the check was an accord and satisfaction as to this amount, $248.00.[4]

■ Accordingly, judgment will be entered for the plaintiff in the sum of

$1,503.30, with interest at 5% from December 12, 1966,[5] the date the corrected invoice was mailed, and 10% attorneys fees under La.R.S. 9:3902.[6]

---

the Louisiana jurisprudence, which appears to reach the same result; however Louisiana law is not applicable here, except to the extent incorporated into federal law, since the jurisdiction of the court is not based on diversity.

3. Franchi Const. Co. v. James P. McGuinness Co., 5 Cir., 1968, 392 F.2d 720; Transamerica Ins. Co. v. Red Top Metal, Inc., 5 Cir., 1967, 384 F.2d 752; Union Indemnity Co. et al. v. United States for use of Page Engineering Co., 6 Cir., 1935, 74 F.2d 645; Jefferson Standard Life Ins. Co. v. Lightsey, 4 Cir., 1931, 49 F.2d 586; Matlack Coal & Iron Corp. v. New York Quebracho Extract Co., 2 Cir., 1929, 30 F.2d 275.

4. Matlack Coal & Iron Corp. v. New York Quebracho Extract Co., note 3 supra.

5. R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 1940, 112 F.2d 150; Hargrove, Guyton, Van Hook & Ramey v. Blanchard, 1968, 216 So.2d 127 (La. App.2d Cir.). The federal law under the Miller Act incorporates state law on the subject of interest rate and the time from which it commences to accrue, or adheres to the terms fixed in the contract between the parties. The *Farnsworth* and *Hargrove* cases hold that, under Louisiana law, interest accrues from the date payment ought to have been made, i. e., the date on which the statement is mailed. See also Louisiana Civil Code Article 1938.

6. The *Franchi* and *Transamerica Ins. Co.* cases, note 3 supra, hold that attorneys fees are due Miller Act claimants when attorneys fees are recoverable under similar circumstances under state law.