## THE HARRY AND FRED.

### KING v. THE HARRY AND FRED.

*(District Court, E. D. New York. February 24, 1892.)*

**TUGS AND TOWS—TOWING OVER BAR—GROUNDING—DUTY OF TUG—KNOWLEDGE OF TOW.**

A tug-boat, in undertaking to tow a boat over a bar, the conditions of which are unknown to the tow, is bound to ascertain her draft, and not attempt to tow her if the water is insufficient. But when a tow is taken as usual in a long course of dealing, the requirements of which as to draft were well known to the tow, and the master of the tug had no reason to suppose that the tow was loaded deeper than allowed, and took her in the best water, and the tow, in consequence of her unusual draft, grounded, the tug was *held* not liable.

In Admiralty. Suit against a tug to recover for grounding tow. Libel dismissed.

*James Parker*, for libelant.

*Alexander & Ash*, for claimants.

BROWN, District Judge. On July 25, 1890, the libelant's canal-boat D. M. Long, loaded with coal, ran aground while passing over the bar in going up Coney Island creek in tow of the tug Harry and Fred, and sustained damages for which the above libel was filed.

The evidence leaves no doubt that the libelant had repeated and abundant notice that to go up that creek his boat must not be loaded deeper than 5½ feet. Though the depth of water on the bar a little before high water varied somewhat with the changes of the weather and the season, 5½ feet was the well-known limit of draft that it was safe to undertake to tow over the bar. The weight of testimony is clearly to the effect that the libelant's boat at this time drew six feet at the stern, and still more at the head. She grounded at the bow and easily swung around so that her stern pointed up the creek, and she could not be got off even with an additional hour's rise of the tide up to high water. This fact, coupled with the swing of the stern, itself having six feet draft, confirms the several other witnesses that the draft at the bow was considerably more than six feet. The pilot testifies that the Long had the best of the water; and

the libelant's measurements after the grounding, showing that at a point 30 feet distant abreast of the bow to the right, the water was three inches less, confirm the pilot's statement in this respect.

.The libelant testifies that he had repeatedly sent up the creek a greater tonnage load than was aboard the canal-boat at this time. Opposed to this is the testimony of the consignee's son, that when the boat arrived up the creek on this trip she drew 5½ feet after 30 tons had been removed for the purpose of getting her off. Some explanation of these apparent discrepancies may, perhaps, be found in the fact that the canal-boat had been leaking before she arrived at the bar, so much so that in the absence of the boat's captain, two men were employed to pump; and in coming down the two women on board were seen working the pump. With the boat much loaded by the head, the water from any leak would accumulate there and increase the draft forward.

It is urged that the captain of the tug, before taking the boat in tow, ought to have examined her draft, and should not have taken her in tow if the water was insufficient. This would undoubtedly be so if this had been a first trip, and the captain and the owner of the Long had no knowledge of the circumstances. In that case it would be the business of the tug-boat to inquire into her draft before trying to take her over the bar. But in the present case there had been a long previous course of dealing; the boat had been up the creek many times in charge of this tug; the requirements were well understood by all parties; and the captain had no reason to suppose the boat was loaded deeper than usual, or . contrary to the known usage. No intimation of it was given to him. In coming to be towed in accordance with the previous custom, it was the duty of the tow to conform to the well-known requirements, and she was presumed to have done so. The tug was not put upon inquiry, and had no reason to make inquiry or investigation concerning the canal-boat's draft. As the grounding arose from overloading, either by too much cargo, or lack of proper pumping, the fault was with the canal-boat; there was no negligence or fault on the part of the tug. I have examined the various authorities cited by the libelant's counsel, but do not find them applicable to facts like the present. As the tug is not an insurer, but liable for negligence only, the libel must be dismissed with costs.