## THE PRIMROSE.

### RAMSDELL et al. v. CORNELL STEAM-BOAT CO.

### No. 377.

Circuit Court of Appeals, Second Circuit.

July 7, 1930.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for appellant.

Single & Single, of New York City (Forrest E. Single, of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The cause of action asserted by libelant is for negligent towage. Cornell Steamboat Company contracted to tow libelants' barge and cargo from Dennings Point Brick Yard to New York. Accordingly, its tug Primrose took in tow the barge No. 7 loaded with brick and started out from the dock into the inlet which flows down to the Hudson river towing No. 7 stern first. The barge was 118 feet long, 36 feet wide at the top, and 35 feet wide at the bottom.

The inlet was used only for boats going up to the brick yard and back to the river. Saplings were placed by the Denning Point Brick Company each year on either side of the inlet to mark the channel. They were in approximately parallel lines about 40 to 45 feet apart, and were put at intervals of from 50 to 100 feet from one another along each side of the inlet. It is thus evident that there was very little room to tow any barge through this narrow strait and most of the witnesses testified that barges frequently grounded as they were taken through. No. 7 was so heavily loaded that she only had a freeboard of three inches. She touched on the east side and then on the west soon after starting on her trip, and shortly afterwards fetched up on a rock on the west side and suffered injuries.

The trial judge found that the rock was outside the channel, and upon this finding concluded that the tug was negligent and that she and her owner were liable to libelant for their damages.

Meehan, who was a bargee on one of libelants' other brick barges, came on the scene some four or five hours subsequent to the accident and after the tide, which had been flood when the barge stranded, was low. He testified that he found No. 7 angled across the channel with her stern on the west bank and her bow on the east bank. The bargee of No. 7 said the planks of the barge which were broken by the rock on which the barge stranded on the westerly side of the inlet

were 2½ to 3 feet from the outside edge of the vessel. While Meehan testified that the barge was out of the channel with its port end resting on the westerly bank, he saw it only after it had pivoted around on the rock as the tide fell. He was not present when she grounded, and even when he saw her four or five hours afterwards he made no attempt to locate her position with reference to the line of saplings, though he said that the bushings were in place. This was the witness on whom the trial court relied. The finding of the judge, confessedly based on Meehan's testimony that the rock was outside the channel, was unwarranted, first, because the marked channel was the space between the lines of saplings and the witness disclaimed any observation of where the rock or the stranded barge was with reference to those saplings; second, because the rock was from 2½ to 3 feet inside of the westerly side of the barge —a location nowhere shown to have been outside the channel. The trial judge seems to have fallen into error in regarding the dredged channel as distinguished from the *apparent* channel marked by the saplings as the place where the tow should have navigated.

The bargee of No. 7 testified that he made no examination to see whether the rock was in the line marked by the saplings, but his diagram (Exhibit 1) shows both it and the stranded barge within the marked lines. His estimate that his barge was 2½ feet outside the channel when she hit the rock was therefore without foundation. Indeed such an estimate was not only unsupported by any reference to the lines of saplings but generally contradicted by his later statement that up to the time he was surprised by hitting the rock he "had seen nothing out of the ordinary or nothing that looked in anyway wrong. * * * *"

Mignault, another bargee, who had been in libelants' employ and one of their witnesses, said that his barge No. 6 had once stranded and suffered some damage at about the same spot where No. 7 later came to grief, but he made no attempt to locate the grounded barge with reference to the saplings.

These witnesses, who all admitted that the saplings were placed to define the channel of the waterway, nowhere testified that the rock or the barge was outside the lines of these markers.

The tugmaster, who was the only witness for Cornell Steamboat Company, testified that the barge was within the bushings. No claim was asserted in the libel or at the trial that the tugmaster should have known of the presence of the rock in this channel which the libelants had themselves marked. Indeed such a contention was expressly disclaimed.

It may be that the barge was too heavily loaded to pass through this channel. Certainly a vessel having only three inches of freeboard was heavily loaded, but, if she was carrying too great a load to pass through the marked channel, that was a matter for the libelants who had undertaken responsibility for the channel and who owned and had loaded the scow to ascertain. The Harry & Fred (D. C.) 49 F. 681.

We are not accustomed to revise the findings of a careful trial judge, and do so in this case because the proof indicates a waterway so narrow that a barge of the beam of No. 7 could barely pass between the lines of saplings and certainly could not do so if there was not ample depth of water in every part. The evidence showed frequent groundings of various barges in attempts to navigate and the grounding and injury of Mignault's barge No. 6 at practically the same place where No. 7 got into trouble. In such circumstances there is not the usual probability arising from a stranding that the Cornell tug was towing her barge negligently and taking her outside the channel as marked. Undoubtedly the stranding of the barge would ordinarily require the tug to justify her conduct and reconcile it with proper towage. But libelants' advocate admitted on the trial that the appellant had no reason to know of the rock and pleaded and sought to prove that the damage was from a rock lying outside the channel. The appellant's tugmaster testified that the barge was within the marked channel, and none of libelants' witnesses showed that it was not. Accordingly, irrespective of what party had the duty of going forward with evidence, we hold that the appellant proved that the accident resulted only from the presence of a rock within the marked channel. It may be added that, if this were not the case, and the rock was outside, it is singular that libelants should have had it removed shortly after the stranding.

Neither the testimony of libelants' witnesses, nor even the finding of the court, warrant the conclusion that the barge or the rock were outside the lines of saplings. In that channel and not merely in the waters found, ex post facto, to be safely navigable, the tug was justified in towing her barge.

The interlocutory decree is reversed, and the cause remanded, with direction to dismiss the libel with costs.