**PRYOR et al. v. STRAWN.**

**No. 10059.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 29, 1934.

596

F. H. Gaines, of Omaha, Neb. (Charles F. McLaughlin and F. S. Gaines, both of Omaha, Neb., on the brief), for appellants.

Harold M. Kelley, of Omaha, Neb. (Robert J. Webb, of Omaha, Neb., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge, delivered the opinion of the court.

This is an action to recover damages caused by the alleged death by wrongful act of Frank E. Strawn, appellee's intestate. The parties will be referred to as they were designated in the lower court.

At the close of all the evidence, defendants moved for a directed verdict, assigning, among other grounds, the insufficiency of the evidence. The case was sent to the jury on instructions, to which the defendants saved certain exceptions. The jury returned a ver- dict in favor of the plaintiff for $10,000, and, from the judgment entered thereon, this appeal has been perfected.

Defendants assign error in three particulars: (1) That the court erred in denying their motion for a directed verdict; (2) that at the time of his death plaintiff's intestate was in the employ of the defendant Lucius Pryor, by virtue of which he was entitled to compensation insurance, and hence an action for damages would not lie; (3) that the court erred in its instruction to the jury which set forth a statute of Kansas relative to the law of the road.

The denial of defendants' motion for a directed verdict brings before us the question of the sufficiency of the evidence to sustain the judgment and verdict. In considering that question, we do not weigh the evidence, but examine it only for the purpose of determining whether or not there was substantial evidence to sustain the verdict. Illinois Power & Light Corp. v. Hurley (C. C. A. 8) 49 F.(2d) 681. We must accept the testimony in favor of plaintiff as true, and plaintiff is also entitled to such reasonable favorable inferences as may fairly be drawn therefrom, and, where the evidence, when so considered, is of such a character that reasonable men may reach different conclusions, then the case presents a jury question, and the court should not direct a verdict. Wharton v. Aetna Life Ins. Co. (C. C. A. 8) 48 F.(2d) 37; Illinois Power & Light Corp. v. Hurley (C. C. A. 8) 49 F. 681; Limbeck v. Interstate Power Co. (C. C. A. 8) 69 F.(2d) 249; Asher v. United States (C. C. A. 8) 63 F.(2d) 21; Wheeler v. Fidelity & Deposit Co. (C. C. A. 8) 63 F. 562; Self v. New York Life Ins. Co. (C. C. A. 8) 56 F. (2d) 364; Farmers' Nat. Bank v. Missouri Livestock Commission Co. (C. C. A. 8) 53 F. (2d) 991; Bank of Union v. Fidelity & Casualty Co. (C. C. A. 8) 62 F.(2d) 1040.

It appears from the evidence that on March 23, 1933, Frank E. Strawn, the deceased, was a passenger in an automobile driven by defendant Phillip Pryor, from Falls City, Neb., bound for Wichita, Kan. The defendant Lucius Pryor owned the automobile, and it was being driven under his direction. Martino Rossi was also a passenger in the car, with the two defendants and the deceased. The accident resulting in the death of Frank E. Strawn occurred on United States highway No. 75, about 11 miles south of Fairview, Kan., which is about 40 miles from Falls City, Neb. The automobile, with the owner, driver, and passengers, left Falls City about 9 o'clock in the morning of March

23, 1933. There had been a bad storm the previous night, and in the morning the road was wet and slippery. It was snowy and icy, and the snow and ice had begun to melt. The surviving passenger, Rossi, as a witness for plaintiff testified: "I was very nervous and before the accident happened, I say to Mr. Pryor and his son I would get out of the car, and I was very scared. The road was slippery that morning and I got scared myself. The road was slippery on account of the snow the night before and then the rain. The condition was slippery notwithstanding the gravel. The car had no chains on. I looked at the speedometer that morning and it said 38 to 40. I said to Phillip Pryor, 'Go easy, otherwise I will get out of the car,' and then the accident came a few seconds after that."

Defendant Lucius Pryor, who was not driving the car, said he kept his eyes glued on the road and the speedometer during the trip. Approaching the point where the accident occurred, the car went up a slight hill, and it was when the car passed over the summit and started the descent of the hill that it began to skid. The car slid down the road a distance of 290 feet when it crashed into a concrete culvert, inflicting injuries on plaintiff's intestate, from which he died. The last half of the distance from the top of the hill to the culvert was practically level road. As the car started sliding, its speed increased a little. The driver put his car into second gear, but did not put his foot on the brake. Defendant Phillip Pryor testified: "Then we started to slide sideways so the car slid down this little hill sideways until we crashed into the culvert."

The north edge of the culvert was about 290 feet from the top of the hill. The driver had operated a car for seven or eight years in both city and country driving. The car was in good condition; the tires were nonskid, in good shape, and the brakes were in excellent condition. The driver was not familiar with the road.

Defendants contend that the evidence shows the existence of a depression or "chuck hole" on the south side of the elevation or hill, and that it was there the car started to slide, the slide continuing until the collision with the concrete culvert, and that the depression caused the rear end of the car to swerve and start sliding or skidding. Evidence for defendants shows the road to have been dragged, and indicates that the ice and snow, which had fallen the previous night, were not on the road, but that it was firm, though moist, after leaving Falls City. Their testimony in-dicates that, between the "chuck hole" and the concrete culvert, the road was muddy. It is urged by the defendants that a speed of 30 to 40 miles an hour was not excessive, that the evidence shows the road was not slippery before the hill was reached, and that contact with the "chuck hole," which could not be seen until the car was within 20 or 30 feet of it, caused the accident. From these facts, it is argued by defendants that the accident was unavoidable.

There was evidence, however, from which the jury might have found that the car was being driven at an excessive rate of speed, in view of the slippery condition of the highway. The "chuck hole," described by defendants' witnesses as a hole in the middle of the road, about three feet wide, north and south, eight feet east and west, and six inches deep, was described by a witness for plaintiff as a little dip, "it wasn't soft but solid." This witness was a road maintainer, and testified that there was nothing in the condition of this depression that under his instructions as a road maintainer required fixing, although part of his duty was to fix holes and depressions in the road.

In view of the verdict, all conflicts in the evidence must, of course, be resolved in favor of plaintiff, and this eliminates the "chuck hole" as a cause of the accident. We must also accept as true the testimony that the highway was in a slippery condition, due to the snow, ice, and rain of the night before, and that the car was driven at a negligent rate of speed, in view of this condition of the highway. The propriety of any rate of speed must depend upon all the surrounding facts and circumstances, and it cannot be fixed at any definite number of miles per hour. The question of negligence is ordinarily one for the jury. Hampton v. Des Moines & Cent. I. R. Co. (C. C. A. 8) 65 F.(2d) 899; May Department Stores Co. v. Bell (C. C. A. 8) 61 F.(2d) 830. The defendant Lucius Pryor, although he was not driving the car, testified: "Nothing unusual occurred prior to the accident. I had my eyes glued on the road and the speedometer." The conditions were such, apparently, as to cause considerable anxiety, if not fear, to this defendant. The witness Rossi was also in a nervous condition, and fearful for his safety just before the accident. We think the jury may well have believed that the fear entertained by the passengers in the car was inspired by the condition of the highway, coupled with the speed of the car, and the manner in which it was being handled, and that the question of wheth-

er the car was negligently operated was for the jury.

◼ The contention that the deceased was an employee of the defendant Lucius Pryor, and hence no recovery could be had, except under the Workmen's Compensation Law of Nebraska, is not sustained by the evidence. True, the widow of deceased testified that Pryor hired Strawn, and that he was to pay deceased his salary of $100 a month. This was given as her recollection of an oral contract. There was, however, introduced in evidence two letters from Lucius Pryor, which conclusively showed that deceased was not in his employ, but that, in employing him, Pryor acted for some other person, who was to pay his salary. Pryor, although present at the trial, did not testify on this subject. There was no error in refusing to leave this as an issue of fact to the jury nor in refusing to direct a verdict for defendants on the ground of the existence of the relationship of employer and employee.

It remains to consider the alleged error of the court in instructing the jury with reference to the statute of Kansas relative to the law of the road. The court in its instructions gave the law of the road of Kansas as follows: "That no person shall operate a motor vehicle on any highway outside of a village or city at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road, and the conditions of the road, nor at a rate of speed such as to endanger the life or limb of any person." Rev. St. Supp. Kan. 1933, 8—122.

The court charged the jury that, if they found from a preponderance of the evidence that the automobile was being operated in violation of the statute, and such violation contributed to, or was the proximate cause of, the accident, violation of the statute would constitute negligence per se. They were also instructed that, if they should find from a preponderance of the evidence that at the time the defendants were driving their car at a rate of speed greater than was reasonable and proper, having regard for the condition of the road, or at a rate of speed such as to endanger the life and limb of the occupants of the car, or any of them, and that such rate of speed contributed to, or was the proximate cause of, the accident, their verdict should be for the plaintiff.

◼◼ It is observed that the exception taken to the instruction was to the effect that it "simply leaves to the jury to determine negligence in violation of that law without any facts whatever upon which to predicate a verdict." It is here urged that the instruction does not tell the jury what facts or acts constitute negligence, and that the court should have advised the jury as to what fact or facts would constitute a violation of the statute. It is doubtful if this question was presented to the lower court. The exception there simply questioned the sufficiency of any facts in the record upon which to predicate the instruction. It was practically a challenge to the sufficiency of the evidence, and not a direct challenge to the correctness of the instruction. It is not suggested that the court should have reviewed the facts in its instructions, and, before an appellant can be heard to complain of the correctness of an instruction, he must first have brought the matter sharply to the attention of the lower court, so that that court might have an opportunity to correct the error, if any. The instruction correctly stated the law of Kansas, where the accident happened. Barshfield v. Vucklich, 108 Kan. 761, 197 P. 205.

◼ The question now sought to be raised is whether the instruction was bad because it was in the abstract rather than in the concrete. It must, however, be considered in connection with the other instructions. The court fully charged the jury as to the conditions under which a verdict should be returned in favor of defendants, charging them that (1) if the defendants were driving their car at a rate of speed reasonable and proper, having regard for the condition of the road, and at such a rate of speed as not to endanger the life or limb of any person in the automobile, and were otherwise free from negligence which contributed to, or was the proximate cause of, the injury, or (2) if the "chuck hole," dip, or depression was of such size and nature, and was in such a position, so that it was suddenly and without warning encountered, and that the effect of the encounter on the car was of such a nature as to be the proximate cause of the injury, and the sudden emergency caused by such contact was not due to the driver's negligence, then their verdict should be for the defendants. No exception was taken to these instructions, and surely the instruction objected to, when read in connection with the other instructions, was not objectionable.

◼ It is well settled that the reading to the jury of a statute which lays down the measure of duty of a defendant is not error. Maryland Casualty Co. v. Cook-O'Brien Construction Co. (C. C. A. 8) 69 F.(2d) 462; Sommer v. Carbon Hill Coal Co. (C. C. A. 9) 107 F. 230.

While instructions in the abstract are not to be commended, yet instructions must be considered as a whole, and, when so considered, it is clear that the court submitted to the jury the question of excessive speed as the determining issue of negligence for which defendants would be liable, and, on the other hand, the question of reasonable and proper speed, and the sudden encountering of the dip or "chuck hole," as facts or conditions which, if believed by the jury, would relieve defendants from the charge of negligence.

The judgment appealed from is therefore affirmed.