### SEARS, ROEBUCK & CO. v. PETERSON.

### No. 10004.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1935.

Rehearing Denied April 2, 1935.

244

VAN VALKENBURGH, Circuit Judge, dissenting.

———◆———

Frank Janes, of Minneapolis, Minn. (George Hoke and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellant.

William H. De Parcq, of Minneapolis, Minn. (Robert J. McDonald, of Minneapolis, Minn., on the brief), for appellee.

Before STONE, GARDNER, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

In this case appellee brought action against the appellant to recover damages for personal injuries caused by her falling on the floor of its store made dangerous by the alleged negligence of appellant. She recovered a verdict, and, from the judgment entered thereon, appellant appeals. The parties will be referred to as they appeared below.

The substantial question involved is whether the lower court erred in denying defendant's motion for an instructed verdict, and in support of this contention it is urged that: (1) There was ample inspection of the floor; (2) the twine over which appellee stumbled could not have been upon the floor for such a length of time that, in the exercise of reasonable care, the defendant should have discovered its presence; (3) defendant had no knowledge of the presence of the twine on the floor, and there was no proof that it placed the twine upon the floor.

The evidence tended to show that plaintiff, a woman of seventy years of age, about noon on the 10th of May, 1933, went to the seed department of the store operated by defendant in the city of Minneapolis, for the purpose of purchasing some garden seeds. The seed and shrubbery department was in a tent, running along the westerly wall of defendant's permanent store building. The tent was about fifty feet long by twelve feet in width, and had a dirt floor. There were two counters inside the tent, with an aisle between them. The counters were about three and a half feet high, and on them were displayed seeds and nursery stock. On hot days the evergreen trees, forming a part of defendant's stock, were placed inside the tent along one side of the aisle, to keep them out of the sun, and on the day in question some of these evergreen trees were inside the tent. Plaintiff purchased two rose bushes at the north end of the tent, and then, desiring to purchase some seeds which the clerk was unable to find in the seed cabinet at that end of the tent, she followed the clerk, at his invitation, down the aisle toward the south end. Near the seed cabinet at that end of the tent were some small evergreen trees, thirty to thirty-six inches high, wrapped with burlap and binding twine. After getting the desired seeds, the clerk started back toward the cash register, which was on the easterly counter, and plaintiff, walking in the aisle, started to follow. She took one step with her left foot when it became entangled in some rope or twine and caused her to fall, resulting in the injuries complained of.

On investigation, there was found to be a piece of rope or twine, about four feet long, with a loop at the end of it, which was around her left foot. She did not see this rope before she fell, but it had been lying on the ground in the aisle. The lower part of the aisle towards the floor was dark be-cause the stands or counters obstructed the light. The rope, as it is called in the testimony by some of the witnesses, was a piece of rather stiff binder twine, used to wrap the evergreens. In describing the manner of wrapping the evergreens, Mr. Seibert, the clerk who waited on plaintiff, testified:

"The evergreens, you started the wrapping on the bottom of the tree, and as you go up you fold your branches in, and you wrap the string around, and when you get to the top you wrap it, and it is tied with a slip-knot on the top of the tree. * * *

"In making sales of these trees some were unwrapped and some were left wrapped up. If we could not please the customers with the ones we had unwrapped we would unwrap more. Three men were employed at this stand but at the time of the accident there were only two there, the third man having gone to lunch."

Detailing the manner in which the accident occurred, this witness further testified:

"I first saw Mrs. Peterson when she came along in front of the stand and looked at the rose bushes. I went out to wait on her and sold her two rose bushes, which I placed on the wrapping table near the register inside the tent or stand, as shown in defendant's Exhibit 2. She followed me in and said she wanted some seed, which I could not find in the seed cabinet at the north end. I then asked her to follow me to a cabinet at the other end where we might find the seed she wanted. This other seed cabinet was about twelve or fifteen feet south of the cash register. * * * After getting the seeds and learning that that was all Mrs. Peterson wanted to buy, I started back toward the register and she started to follow me. The next thing I saw, she was lying flat on the ground. She was lying against two small evergreens on the left side of the aisle on her right shoulder. There was a piece of twine on her left foot.

"Q. What part of the twine was on her foot? A. The loop which goes on the top of the tree.

"This loop was around her left foot. The entire piece of twine was about four feet long. This was about the total length of twine necessary to wrap around trees such as were there that day. This twine or loop was not connected to any one of those trees at the time we picked her up. There were several trees there at the time that did not have the rope or string on them because

they had all been taken off to show the customers. All evergreens are wrapped with this kind of twine and all of them have a loop at the top. At the time of the accident this twine was not connected to anything at the other end. I did not see this twine before we took it off her foot. It was out in the aisle where people would walk when we took it off her left foot. I haven't any idea how the twine got there. Nobody, other than employees, ever unwrapped the trees."

Plaintiff, among other things, testified as follows: "When I turned around and started to walk my left foot was tangled up in a rope. When I went to move forward I fell flat right in the aisle on my right shoulder and heard the bones crack. The clerk who waited on me was the first one to come to me. I think I had taken one step and fell as I was about to take the next step with my left foot. When the clerk came to me he took the rope off my left foot. He said to the other clerk, 'She fell on the rope.' I had not seen the rope before I fell. I was right near to the clerk as I walked down the aisle. This rope was on the ground in the aisle."

■ In the circumstances here disclosed, plaintiff entered the store of defendant as an invitee. As such, the defendant owed her the duty of exercising reasonable or ordinary care for her safety. It was not an insurer of the safety of plaintiff while on its premises, but was liable only for injury resulting from a breach of its duty to exercise reasonable or ordinary care. This duty is an active, continuous one. It owed her the duty of protection against injury through negligent acts of its employees. The court in effect so instructed the jury, and neither party has taken any exceptions to the instructions as given.

■ The difficulty in the case does not arise from the applicable principles of law, but in the application of those principles to the proven facts. The evidence before the jury was in part circumstantial, but it was no less probative on that account, and circumstantial evidence is as competent in this character of action as in any other.

■ The following circumstances may be noted as bearing upon the question of negligence: (1) The twine in which plaintiff became entangled, and over which she fell, was the character of twine used by defendant in wrapping the evergreen trees; (2) it was the same length as that used in wrapping a tree; (3) it had at its end the same kind of loop or knot as that used; (4) it was lying near an unwrapped tree; (5) only employees of defendant unwrapped and removed the twine from these trees. From these circumstances, the jury was warranted in inferring that the twine over which plaintiff tripped and fell had been removed from one of the evergreen trees by one of defendant's clerks, and thrown or left in the aisle by him. These inferences all logically flow from the proven facts. While defendant employed in this department three clerks, none of them, except one who testified for plaintiff, was placed on the witness stand, and no explanation is offered for defendant's failure to call these witnesses. In this condition of the record, we must assume that, had they been called, they would not have contradicted any of the testimony produced by plaintiff with reference to the unwrapping of these trees by defendant's employees, and would not have testified, we may assume, that the twine was not removed from the evergreen tree by one of them, and thrown in the aisle, where it was found at the time of the accident. Lincoln Life Ins. Co. v. Erickson (C. C. A. 8) 42 F.(2d) 997; Backus v. Owe Sam Goon (C. C. A. 9) 235 F. 847.

■ But it is urged by defendant that there was no proof that defendant had knowledge of the presence of the twine upon the floor, or that it had been upon the floor for such a length of time as to charge it with constructive knowledge. This is not a case in which the condition was attributable either to the elements or the act of some third party. The negligence here complained of was that of the defendant itself, committed, it is true, by its employee. It would be an anomaly to hold that one is not to be charged with notice of a condition arising from his own active negligent act, or that there must be proof of knowledge or notice of a dangerous condition created by the negligent act or omission of the owner of the premises. It is universally held that the owner of the premises is charged with notice of any structural defects in his property, on the theory that one must be charged with notice of his own act, and, hence, whenever defective conditions are due to the direct act of the defendant, or of persons whose acts are constructively his own, no notice need be shown, but is necessarily implied. Grzboski v. Bernheimer-Leader Stores, 156 Md. 146, 143 A. 706, 707;

Wine v. Newcomb, etc., Co., 203 Mich. 445, 169 N. W. 832, 834; Jones v. Pennsylvania Coal, etc., Corp., 255 Pa. 339, 99 A. 1008.

In Wine v. Newcomb, etc., Co., supra, plaintiff fell by tripping over twine while she was a customer in a store. In affirming a judgment for the plaintiff, the court, among other things, said: "In the case at bar, there is evidence of the active agency of an apparent employee of defendant in making the passageway unsafe."

In Grzboski v. Bernheimer-Leader Stores, supra, a customer slipped on pieces of orange peel in a small pile of rubbish in the aisle, and was injured. In affirming a judgment for plaintiff, the court, among other things, said:

"It would still be possible, and consistent with such a finding, that the orange peel might have been dropped on the pile by a customer subsequently, without the knowledge of the employee who swept it up, but it seems to this court that the probability would be that any such thing on or in a small gathering of rubbish at that one spot would itself have been gathered or swept there, a probability so strong that practical men would regularly take it as establishing the fact. And such a probability would be proper basis for a finding of fact. * * *

"From the evidence given in the case so far, therefore, it seems to this court that the jury might reasonably conclude that the presence of the orange peel in the aisle was known to employees of the defendant, and, further, that some one of them arranged it as it was. Whether doing so indicates negligence on the part of the employee, whether small pieces of orange peel so placed should be considered likely to cause injury, so that a reasonably careful man would have avoided leaving them there as they were, we regard as a question for the jury."

In the instant case there was little room for the speculation that some third party might have placed this twine where it was found. All the proven circumstances are inconsistent with such a conclusion. As said by us in Terminal R. Ass'n of St. Louis v. Farris, 69 F.(2d) 779, 785: "The fact that hypotheses incompatible with the liability of the appellant may be conjectured or imagined when such are not based on any testimony in the case, affords no reason to reverse a verdict and judgment which is supported by the testimony."

The jury may not base a verdict on mere speculation, but neither should the court indulge in mere speculation as to a possible defense unsupported by any proven facts. The lower court submitted to the jury the question as to whether defendant, or its employees, left the twine in the aisle, and whether this constituted negligence, and we are of the view that it cannot be said that there is no substantial evidence to sustain the verdict on these issues.

Much is sought to be made of the fact that the premises were from time to time carefully cleaned and inspected, and hence it is claimed defendant discharged its full duty to its customers who visited its premises. The only testimony bearing upon this question is as follows: "Customarily, after a tree was unwrapped, the rope was taken away. We were supposed to keep the aisles clean and tried to make it a rule to do so. We knew that customers walked up and down the aisle all hours of the day. * * * Customarily, the place was regularly cleaned every morning and the clerks had been complimented by the State Inspector 'for keeping it nice and clean.'"

It is to be observed that, according to the standard of conduct or care fixed by the defendant itself, after a tree was unwrapped the rope or twine should have been taken away. In the instant case, this practice had not been followed. In other words, defendant had departed from the customary caution taken, and, in so doing, we think the jury was warranted in finding that it was negligent. The witness further said they were "supposed" to keep the aisle clean and tried to make it a rule to do so. Here, again, is a statement of what defendant had established as a standard of proper care, but the evidence warranted the jury in finding that in the instant case this standard of care had not been met.

That it was customary to clean the place every morning was again the statement of a practice. The duty of defendant with reference to the safety of these premises, however, was a continuing one, and was not necessarily discharged by a single act of "cleaning every morning." If, during the day, the premises became unsafe for the use of customers, they could not properly be left in such condition until the morning cleaning process might again place them in safe condition. Neither does the fact that the state inspector complimented the clerks for keeping the place "nice and

clean" have any bearing on the safety of the premises at the time of the accident, nor the negligence of the defendant in this regard. The place may have been "nice and clean" from a sanitary standpoint, and still have been in a dangerous condition. It is not shown for what purpose the state inspector viewed the premises, nor when he had viewed them with reference to the time of the accident, nor what he did by way of inspection.

We do not think this evidence converted the question of negligence, which is usually one of fact for the jury, to one of law to be decided by the court. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence becomes one of law for the court. Illinois Power & Light Co. v. Hurley (C. C. A. 8) 49 F.(2d) 681; Philadelphia Storage Battery Co. v. Kelley-How-Thomson Co. (C. C. A. 8) 64 F.(2d) 834; Chicago, M., St. P. & P. R. Co. v. Linehan (C. C. A. 8) 66 F.(2d) 373; Chicago, B. & Q. R. Co. v. Kelley (C. C. A. 8) 74 F.(2d) 80; Pryor v. Strawn (C. C. A. 8) 73 F.(2d) 595; Farmers' Nat. Bank v. Missouri Livestock Commission Co. (C. C. A. 8) 53 F.(2d) 991; Bank of Union v. Fidelity & Casualty Co. (C. C. A. 8) 62 F.(2d) 1040; Wisconsin & Arkansas Lbr. Co. v. Day (C. C. A. 8) 35 F.(2d) 563; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

We conclude that the court did not err in denying defendant's motion for a directed verdict, and the judgment appealed from is therefore affirmed.

VAN VALKENBURGH, Circuit Judge (dissenting).

I regret that I am unable to concur in the conclusion reached by my associates. In my judgment it ignores, or fails to give due weight to, the primary essence of negligence, which is the absence of reasonable foresight for harm. A person is not bound to foresee and provide against casualties which are not reasonably to be expected. The actual result of an act, or omission, is not controlling in determining whether or not it was negligent, nor is it to be judged by what may appear after an injury has occurred.

The foregoing principles taken from the text of 45 Corpus Juris, p. 635 et seq. and cases cited, are universally accepted. The learned writer of the majority opinion in this case has stated them admirably in Fort Smith Gas Co. v. Cloud (C. C. A.) 75 F. (2d) 413, heard and decided at this same term, as follows: "To constitute actionable negligence the injury must have been the natural and probable consequence of the alleged negligent act. The consequence of the negligent act must be within the range of probability as viewed by the ordinary man, and consequences which are merely possible cannot be regarded as either probable or natural. * * * One is bound to anticipate only the reasonable and natural consequences of his conduct."

Unfortunately, these pertinent rules are not applied in the instant case. The place where the accident occurred was regularly cleaned every morning, so carefully that appellant's employees had been complimented by the state inspector for their conduct in this respect. There was present, and uncontradicted, affirmative evidence of reasonable inspection and supervision. Evidence of the length of time this piece of twine had lain upon the floor of the aisle is entirely lacking, so that no negligence can be predicated upon the mere failure to correct a condition of which appellant had actual or constructive notice. A specimen of this twine was exhibited to this court at the hearing. It was not a rope, but a hempen string, commonly known as binder twine. It was in no sense a dangerous article, one conveying a warning of danger, and to my mind, from this record, no one seeing it there would have reasonably anticipated probable injury from its presence on that floor. But no one did see it.

The accident occurred at noon, 12:15 to be exact. This string found its way to the floor presumably at the hands of an employee engaged in selling or exhibiting a tree during that forenoon; and, in order to charge appellant with actionable negligence, it is necessary to hold that this piece of twine, if allowed to remain upon the floor, was in se such a menace to safety as to charge appellant with reasonable cause to anticipate threatened danger as natural and probable. To me this does not seem to be a case upon which, before the fact, reasonable minds should differ. The mere finding of a jury, of course, furnishes no basis for such a conclusion. The affirmance of this judgment upon such a slender basis, will, I fear, furnish a dangerous precedent to the view that a merchant is in practical effect an insurer against accidents upon his premises. For this reason I am constrained to dissent.