## JEFFERSON STANDARD LIFE INS. CO. v. LIGHTSEY.

No. 3041.

Circuit Court of Appeals, Fourth Circuit.

April 29, 1931.

McCLINTIC, District Judge, dissenting.

Robert McC. Figg, Jr., of Charleston, S. C., and Julius C. Smith, of Greensboro, N. C. (Brooks, Parker, Smith & Wharton, of Greensboro, N. C., and Hyde, Mann & Figg, of Charleston, S. C., on the brief), for appellant.

Randolph Murdaugh, of Hampton, S.·C., for appellee.

Before PARKER, Circuit Judge, and McCLINTIC and SOPER, District Judges.

SOPER, District Judge.

This action at law was brought to recover the sum of $5,000 under the provision for double indemnity in a life insurance policy upon the life of Jacob Calvin Lightsey. The policy provided for the payment of $5,-000 to the wife of the insured upon receipt of due proof of death, and for the payment of the sum of $10,000 if the death of the insured should result, directly and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means.

The insured died on August 16, 1928. Proofs of death were submitted, and the sum of $5,000 was paid by the company to the beneficiary in October of that year by check containing the indorsement that the payment was accepted in full and complete settlement of all claims under the policy. During this period, the beneficiary was not in possession of the policy and was not aware of the double indemnity provision. She found the policy in January, 1929, and thereupon made demand upon the company for the additional sum of $5,000 on the ground that the death of her husband fell within the terms of the double indemnity clause. This demand having been refused, suit was brought.

The first question which is raised on this appeal is whether the evidence that the death of the insured resulted from accident independently of all other causes was of such character as to justify the submission of this issue to the jury. It is urged by the company that the only reasonable inference from the evidence is that the death was not caused solely by accidental injury, but that, on the contrary, diseases and ailments from which the insured was suffering at the time co-operated and contributed to bring about his death. The plaintiff's evidence tended to show that on the 9th day of August, 1928,

one week before the insured's death, he was engaged at his garage at his home in cranking his Ford car, when it fired loudly, lunged forward a few inches, and knocked him down. He arose after a minute and walked around through the house, but some time later fell and was carried to his bed, from which he was taken to the hospital, where he subsequently died. This testimony was given by the daughter of the insured, who, on cross-examination, emphasized the fact that the car moved only a few inches and pushed her father over. But the jury would have been warranted in concluding from her testimony, taken as a whole, that her father was struck a blow by the car and knocked to the ground. A physician was called in on the day after the accident, and found evidence of a blow to the back of the patient's head, and came to the conclusion that he was suffering from a concussion; that the blow was sufficient to cause concussion and death, and was the direct and sole cause of death. He was of the opinion that the injured man suffered a cerebral hemorrhage from the blow, resulting in paralysis and death. It was, in his opinion, a very slow hemorrhage, and the period of one week between the injury and the death indicated that the arteries of the patient were not at fault, for otherwise they would have ruptured and the patient would have died within forty-eight hours. The physician concluded that the arteries of the insured were at least in fair condition for one of his age.

The conclusions of this witness were assailed by witnesses and documentary evidence offered on behalf of the defendant. There was evidence tending to show that, although the plaintiff's witness had previously known the insured, he had never before treated him; that the physician's certificate, attached to the proof of death at the time of the original settlement, showed that, although the death was caused by cerebral hemorrhage, following cranking of the automobile, his last illness was complicated with or induced by hypertension or high blood pressure, and his death did not result independently of all other causes, from bodily injuries effected solely by accidental means. Other physicians testified that the insured was suffering from syphilis, that his blood pressure, on admission to the hospital, was very high, that he had arteriosclerosis of long standing, and chronic nephritis, and that no external bruises or injuries were found. It was the opinion of these physicians that the death of the insured was caused by cerebral hemorrhage, chronic nephritis, and hardening of the ar-

teries; and that even if an accidental injury contributed to the cause of death, the existing diseases of the insured co-operated to produce that result.

It must be admitted that the evidence produced by the insurance company for the consideration of the jury made out a strong case tending to show that the death of the insured was not due solely to the accident; but, on the contrary, there was the evidence of the plaintiff's physician which tended to show that the accident was the sole cause of death, and we are unable to say, after a consideration of the whole case, that only one reasonable inference, and that favorable to the defendant's contention, could be drawn. We think, rather, that the conflict of testimony created an issue for the jury to decide, and that the action of the District Judge in refusing to direct a verdict in the defendant's favor was correct.

The second question is directed to a portion of the District Judge's charge wherein he endeavored to make plain to the jury the meaning of the double indemnity clause of the policy. This clause, in full, is as follows: "The Company will pay the beneficiary in full settlement of all claims hereunder the sum of $10,000, if, during the premium paying period of this policy and before a default in the payment of any premium, the death of the insured result from bodily injury within ninety days after the occurrence of such injury, directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, not intentionally inflicted by another person or by the insured himself."

The particular portion of the charge objected to is as follows: "I charge you that if a man is in a diseased condition and has an accident, and the accident contributes to his death, and his diseased condition contributes also to his death, I charge you that they are not entitled to recover under this policy. But even though a man may be in a diseased condition, and even though his diseased condition may enable an accident more effectively to bring about his death, if the real cause —the efficient cause—was the accident, the blow that he may have received, and the diseased condition, although he was in that condition, did not contribute as an efficient factor in determining and bringing about his death, then they are entitled to recover. I think that is about as far as I can go. I take it that this policy is intended as a practical working agreement between the parties, and

to be determined in a common sense way, and not upon the question of metaphysics."

The insurance company complains that this instruction was erroneous because it permitted the jury to find for the plaintiff, even though a diseased condition of the insured may have enabled the accident more effectively to bring about his death, and because the words "all other causes" in the clause in question were restricted to mean "all other efficient causes."

We think that the meaning of the double indemnity clause, as applied to the facts of this case, is clear, and that it required a verdict for the company if the death of the insured was caused partly by the accidental blow and partly by a diseased condition. But it is also true that a diseased condition of the insured would not of itself have precluded recovery of the double indemnity, provided that his death was due solely to the effect of the blow. The question for decision is whether the charge of the District Judge could have misled the jury, contrary to the true meaning of the policy, into supposing that they should find for the policyholder if they should conclude that the blow was merely the proximate as distinguished from the sole cause of death. We do not think, from a consideration of the whole charge, that the jury could have been led into this error. In the first place, the use of the expressions "efficient cause" and "efficient factor" were not misleading. They were intended merely to emphasize the causal connection between the accident and the death. The double indemnity clause itself expresses the same idea when it provides that it shall only apply when the death of the insured results directly and independently of all other causes from bodily injuries effected solely through external, violent, and accidental means. The word "effected" obviously means "caused" and the phrase "efficient cause" was merely the emphatic expression of the same thought.

In the second place it becomes clear from a perusal of the charge as a whole that the District Judge, by saying that the diseased condition of the insured might enable an accident more effectively to bring about his death, did not mean to intimate that the plaintiff should recover even if the disease was a cause contributing to the death. In the very paragraph of the charge under discussion, the District Judge said, in substance, that, if a man in diseased condition has an accident, and both the accident and the diseased condition contribute to his death, there could be no recovery under such a policy, but

that, if the real cause—the efficient cause—was a blow, and the diseased condition did not contribute as an efficient factor in bringing about the death, there could be a recovery.

Moreover, the District Judge both before and after the clause in question took the same position. Prior thereto he told the jury in substance that, if the death did not result from bodily injuries effected solely through accidental means, but the insured died in consequence of accidental causes and diseases both concurring, then the verdict should be for the defendant. He also said that, if the accident contributed as an efficient cause of death, but a disease also contributed as such a cause, then there could be no recovery. The same thought was repeatedly expressed in written instructions offered by the insurance company and granted by the court and read to the jury after the delivery of the clause complained of. The jury was told substantially in four successive instructions that the plaintiff could not recover unless the death was caused solely by accidental means independently of all other causes, and that, if the insured had an existing disease which co-operated with the accident to cause his death, and without which the accident would not have caused his death, the double indemnity provision of the policy did not apply and the plaintiff could not recover. Under these circumstances, we do not feel that any mistake on the part of the jury could have occurred. It is plain that the District Judge had in mind the distinction between a condition of the insured and a cause of death which is not infrequently met in cases of this sort and was touched upon by Judge Parker in Mutual Life Ins. Co. v. Dodge (C. C. A.) 11 F. (2d) 486, 59 A. L. R. 1290. It was not unimportant in the case at bar to make clear to the jury that a diseased condition of the insured, unless an essential factor in the fatal result, would not prevent a recovery under the policy in suit.

Finally the company contends that the District Court should have directed a verdict in its favor because the plaintiff, as the beneficiary under the policy, on October 9, 1928, prior to the institution of the present suit, accepted a voucher check in the sum of $5,-000 and indorsed thereon a statement that the check was accepted as full payment and full and complete settlement of any and all claims of whatever nature under the policy. It is said that the transaction constituted an accord and satisfaction between the parties, and discharged the company from all liability under the policy. The court declined to direct a verdict on this account, but charged the jury that, if they should find that the company had given the check, and that it was accepted by the plaintiff in full satisfaction of all liability, and was intended as such under the policy, then the plaintiff could not recover; that the statement on the voucher that it was intended as a full settlement of all claims under the policy was not binding upon the jury, who should take into consideration all the circumstances surrounding the transaction, and should decide whether the parties understood and intended that the amount received by the beneficiary should be in full discharge not only of the ordinary liability, which was conceded, but was intended to be in discharge of the double indemnity liability. If it was not so understood and intended, the acceptance and indorsement of the check would not bar the plaintiff from recovery if her case was otherwise made out.

We think that this instruction was as favorable to the company as it had the right to expect. The principles of accord and satisfaction are well settled. There must be a consideration in this as in other contracts. Consequently it is held that, where a debt is liquidated or certain, and is due, payment of a less sum is not a satisfaction thereof, although the creditor agrees to accept it as such; but where a claim is in dispute, payment and acceptance of a less sum than claimed in satisfaction ordinarily operates as an accord and satisfaction, for under such circumstances there is a sufficient consideration for the settlement. 1 C. J. 539, 551. But it is clear in the case at bar that there was no consideration for the release of so much of the claim as depended upon the application of the double indemnity clause. The company in its pleadings conceded that the policy was in full force and effect at the time of the insured's death, and hence at least the sum of $5,000 was payable to the beneficiary. There was no payment of any part of the claim which is now in dispute. There were in fact two separate and distinct claims in the one contract, one of which depended upon the death of the insured while the policy was in good standing, and the other upon the existence of an accidental cause of death. Payment of an amount concededly due on one of two claims arising on separate promises in the same contract is not a good consideration for a release of a claim on the other. Matlack Coal & Iron Corp. v. New York Quebrach Ext. Co. (C. C. A.) 30 F.

590

(2d) 275; Keene v. Gauen (C. C. A.) 22 F. (2d) 723.

In connection with this point the insurance company claims that the court erred in excluding evidence tending to show that the policy was in a lapsed condition at the time of the insured's death as bearing on the question of consideration for a complete release. This evidence, however, was properly excluded by the District Judge, because the complaint alleged that at the time of the insured's death, the policy was in full force and effect, and the answer conceded this allegation to be true. Under this state of the pleadings, evidence tending to show that the policy had lapsed before the insured's death was obviously inadmissible, at least until some amendment of the pleadings should be made. The beneficiary did not come in court to meet this issue, and it is at least doubtful whether the court would have permitted an amendment of the pleadings, even if application therefor had been made. Certainly the evidence was inadmissible in the state of the case when it was offered.

Irrespective of the lack of consideration, the facts of the case fail to make out a contract of accord and satisfaction of the claim of double indemnity for the fundamental reason that there was no meeting of the minds of the parties on this point. The testimony shows clearly that the beneficiary under the policy was not aware that it contained a double indemnity clause, and that the company on its part had no reason to believe, when the settlement was made, that a claim would be made that the death of the insured was caused by accidental means. The undisputed evidence is that the beneficiary did not secure possession of the policy and knowledge of its contents until after the execution of the indorsement upon the check, and that the proof of death, in the possession of the company at the time the settlement was made, indicated that the death was not caused solely by accidental means, but was complicated with or induced by hypertension or high blood pressure of the deceased. Obviously the release could have no reference to the double indemnity clause and constituted no bar to a claim thereunder. See Fire Ins. Ass'n v. Wickham, 141 U. S. 564, 12 S. Ct. 84, 35 L. Ed. 860; 1 Corpus Juris, 527.

Finding no error in the rulings of the court, the judgment will be affirmed.

McCLINTIC, District Judge, dissents.