William B. BRUCATO, Plaintiff,

v.

EZENIA! INC., Defendant.

No. 1:04CV691.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 29, 2004.

Philip C. Jones, Jones & Associates, Annapolis, MD, for Plaintiff.

David M. Schlitz, Timothy A. Molino, Burns, Doane, Swecker & Mathis, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this diversity contract dispute, plaintiff sues his former employer to recover sales commissions on three sales completed during his employment tenure with defendant. At issue on summary judgment is whether an accord and satisfaction occurs where, as here, the employer treated each of plaintiff's claims separately, explicitly offering nothing on two disputed claims, while offering a 1%, rather than 4%, commission payment as to a third disputed claim. For the reasons that follow, no accord and satisfaction occurred with respect to the claims for which nothing was offered, but one did occur with respect to the claim for which less was offered than what was demanded.

I.[1]

Plaintiff William B. Brucato, a Virginia resident, is a sales agent formerly employed by Ezenia! Inc. Defendant Ezenia! Inc. ("Ezenia"), a Delaware corporation with its principal place of business in Burlington, Massachusetts, is a software development company that provides collaborative conferencing products to corporate and government clients.

Brucato commenced his employment with Ezenia in March 2001[2] as a sales agent responsible primarily for sales to the United States government intelligence agencies, including, among others, the Central Intelligence Agency, the Defense Intelligence Agency, the National Security Agency ("NSA"), the National Imagery and Mapping Agency ("NIMA"), and the Intelligence Community Collaborative Presence/ Intelink management office ("ICCP/Intelink"). In addition to his base pay, Brucato was paid on commission and received a percentage of actual payments collected on sales for which he was the sales representative.

Brucato's employment with Ezenia ended on October 1, 2003. Approximately seven weeks later, on November 20, 2003, Brucato sent Ezenia a letter demanding payment for (i) reimbursable medical expenses, (ii) unused vacation time, and (iii) sales commissions on eight distinct sales. In his letter, Brucato itemized each individual sale for which he claimed a commission and listed the specific amount of the commission claimed. After Brucato

---

1. The record reflects the following largely undisputed facts and where disputes exist they are identified as immaterial or construed favorably to plaintiff, as required. *See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (when reviewing a motion for summary judgment, courts must view the facts in a light most favorable to the nonmoving party).

2. While the complaint reflects that Brucato began work with Ezenia in April 2001, Brucato testified in his deposition that his effective date of employment with Ezenia was March 2001. This lack of clarity as to the date of Brucato's employment is not material to the issue presented.

mailed the November 20 letter, but before Ezenia received it, Ezenia sent Brucato on November 30, 2003 a check for some of Brucato's outstanding sales commissions. Included in the payment were the full commissions for three of the eight sales listed in Brucato's letter.

Following receipt of Brucato's November 20 letter, Ezenia responded to Brucato's demands by letter dated December 9, 2003. At the top of the letter was the following statement: "Please find enclosed two checks representing payments for outstanding commission and vacation pay due to you." In the balance of the letter, Ezenia denied Brucato's claim for medical expenses,[3] conceded that it owed Brucato a portion of the vacation pay requested,[4] and conceded *some,* but *not all,* of the eight commissions claimed by Brucato. Accordingly, Ezenia enclosed two checks with the letter, one for $6,058.00 in vacation pay and one for $4,020.00 in commissions owed. With respect to the sales commissions, the letter also included an accounting of each of Brucato's claims and an explanation for Ezenia's decision to pay all, a portion, or none of each claim. The disposition of Brucato's eight claims is summarized as follows:

(i) Ezenia denied three of the claims explaining that it had already paid Brucato his full commission for these sales in its November 30 sales commission check;

(ii) Ezenia admitted two of the claims in full in the amount of $2,000 and $300, respectively, and included these amounts in the check enclosed with the December 9 letter;

(iii) Ezenia admitted in part a 1% commission for the sale of Ezenia's technology to ICCP/Intelink in the amount of $1,720, but denied Brucato's claim for a 4% commission. In Ezenia's view, this sale was a renewal, not a new sale, and Brucato's contract entitled him to a 1% commission on renewals. This sum was also included in the check enclosed with the December 9 letter;

(iv) Ezenia denied Brucato's claim for a 4% commission on the sale of Ezenia's technology to NIMA, explaining that these orders had not been received and that, even had the orders been received, Brucato would be entitled to only a 1% commission; and

(v) Ezenia denied Brucato's claim for a 4% commission for sale of Ezenia's technology to the NSA on a contract known as Project X, explaining that he was not entitled to a commission on this sale.[5]

Only the claims listed in items (iii), (iv), and (v) remained in dispute and were initially the subject of this lawsuit.

After receiving Ezenia's December 9 letter, Brucato negotiated the enclosed checks and, as he confirmed in his deposition, Brucato understood Ezenia would make no further payments. Indeed, Eze-

---

**3.** Ezenia directed Brucato to his insurance carrier for these claims as it alleged that the insurance carrier, and not Ezenia, was liable for these claims.

**4.** Brucato asserted a claim for 240 hours in vacation pay but, according to Ezenia, its company policy provided that employees could not accumulate and/or carry over from one calendar year to the next in excess of 200 hours of vacation time.

**5.** Ezenia claimed that Brucato was not entitled to a commission for this sale because, in its view, Brucato was not the "effective cause" of the sale. *See* Restatement 2d of Agency, § 448 ("An agent whose compensation is conditional upon his accomplishment of a specified result is entitled to the agreed compensation if, and only if, he is the effective cause of accomplishing the result."); *Atkinson v. S.L. Nusbaum & Co.,* 191 Va. 82, 59 S.E.2d 857 (1950); *Wood v. Hutchinson Coal Co.,* 176 F.2d 682, 684 (4th Cir.1949).

nia made no additional payments to Brucato after December 9, 2003.

On June 18, 2004, Brucato filed the complaint in this case, claiming damages in the amount of $95,367 for unpaid or partially paid commissions on three of the eight sales listed in his November 20, 2003 letter. Specifically, Brucato sought to recover (i) a commission in the amount of $84,900 for the Project X sale, (ii) a commission in the amount of $5,235 for the NIMA sale, and (iii) a commission in the amount of $5,172 for the ICCP/Intelink sale, representing the difference between the 4% commission Brucato originally demanded and the 1% commission paid to Brucato in the check enclosed with Ezenia's December 9, 2003 letter. On November 19, 2004, Ezenia filed a motion for summary judgment, arguing that the check enclosed in the December 9, 2003 letter for the commissions due represented an accord and satisfaction of all claims arising from its employment contract with Brucato, including the claims alleged in the complaint. In response, Brucato argues that there was no accord and satisfaction of these claims because (i) the letter failed to include a conspicuous statement that the enclosed check was offered in full satisfaction of Brucato's claims, and (ii) Ezenia paid Brucato only for claims that it did not dispute, which was not sufficient consideration to discharge the disputed claims. For the reasons that follow, Ezenia's motion for summary judgment must be granted in part and denied in part.

## II.

Virginia Code § 8.3A–311, which governs accord and satisfaction by use of a negotiable instrument,[6] provides that if a person in good faith tenders an instrument as full satisfaction of an unliquidated or disputed claim and the instrument or an accompanying written communication contains a "conspicuous statement" to the effect that the instrument is tendered in full satisfaction of the claim, the claim is discharged if the claimant obtains payment on the instrument and does not tender repayment within ninety days. Va.Code § 8.3A–311.[7] The Supreme Court of Virginia has held that, with only minor variations "to reflect current business conditions," § 8.3A–311 "follows the common

---

6. As this is a diversity suit, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), requires that forum state law, including forum state choice of law rules, governs the substantive claims. *Id.* at 496, 61 S.Ct. 1020. Under Virginia choice of law, the law of the place of performance governs contract performance issues. *Equitable Trust Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565 (4th Cir.1975); *Sneed v. Am. Bank Stationary Co.*, 764 F.Supp. 65, 67 (W.D.Va.1991). It follows, therefore, that Virginia law applies to this employment contract dispute. *See Sneed*, 764 F.Supp. at 67 (holding Virginia law applied to employment contract dispute when undisputed that employment was to occur in Virginia).

7. Virginia Code § 8.3A–311 provides in pertinent part as follows:

(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
(b) ... [T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
(c) ... [A] claim is not discharged under subsection (b) if ... (2) The claimant ... proves that within ninety days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted.

law." *Gelles & Sons Gen. Contr., Inc. v. Jeffrey Stack, Inc.,* 264 Va. 285, 569 S.E.2d 406, 407 (2002) (quoting official comment to Va.Code § 8.3A–311). And, because an accord and satisfaction is an agreement between parties, it requires all the essential elements of any valid contract including an offer, acceptance, and consideration.[8] To ensure a true meeting of the minds, the statute further requires that the instrument or an accompanying written communication contain a "conspicuous" statement that the instrument is offered in full satisfaction of the claim. Va.Code § 8.3A–311. Further, not only must the statement be conspicuous, which describes the statement's "physical attribute[s]," the statute requires that a reasonable person would have understood that the "instrument was tendered as full satisfaction of the claim." *Gelles & Sons,* 569 S.E.2d at 407–08 (citation and quotations omitted). These principles, applied here, compel the conclusion that an accord and satisfaction did not occur with respect to the two claims for which Ezenia offered no payment, but that an accord and satisfaction did occur with respect to the claim for which Ezenia offered less than the full amount demanded.

■ At the threshold, Brucato argues that the December 9 letter and the enclosed check cannot serve as the basis for an accord and satisfaction because it did not contain a "conspicuous statement" that the December 9 check was offered in "full satisfaction of all claims." Va.Code

§ 8.3A–311. This argument fails as it misconstrues the "conspicuousness" requirement. Contrary to Brucato's argument, "conspicuousness" requires only a "term or clause that a reasonable person 'ought to have noticed.'" *Gelles & Sons,* 569 S.E.2d at 407 (quoting Va.Code § 8.1–210(10)). It does not, as Brucato argues, contemplate any specific required language. *Id.* at 408. Nor does it require that the term or clause be in any specific font size or type. *Id.* at 407. Further, the Supreme Court of Virginia has made clear that the conspicuousness requirement "describes a physical attribute of the statement, *not the content or meaning conveyed by the statement.*" *Id.* at 407 (emphasis added). Thus, the statement at the top of the December 9 letter to the effect that the enclosed checks "represent[ed] payments for outstanding commission" was adequately conspicuous. Brucato himself confirmed this by admitting that he saw the statement and understood that Ezenia did not intend to pay him any additional money on any of his claims. Whether a reasonable person would have understood that payment to be tendered in full satisfaction of Brucato's claims is a separate matter and is addressed below.

Given that Ezenia's December 9 letter satisfies § 8.3A–311's conspicuousness requirement, the analysis proceeds next to the question whether the remaining requirements for an accord and satisfaction are met. In this respect, it is appropriate

---

8. *See* 1 Am Jur.2d, Accord and Satisfaction, § 14 ("[I]n order to discharge a claim by means of accord and satisfaction, the essentials to a valid contract must be present, including proper subject matter, competent parties, a meeting of the minds of the parties and consideration."); *id.* § 26 ("It is universally recognized that a good and valuable consideration is one of the essential elements of a valid accord and satisfaction."); *Jefferson Standard Life Ins. Co. v. Lightsey,* 49 F.2d 586,

589 (4th Cir.1931) ("There must be consideration in this as in other contracts."); *Gelles & Sons Gen. Contr., Inc. v. Jeffrey Stack, Inc.,* 264 Va. 285, 569 S.E.2d 406, 408 (2002) ("Under the common law, an accord and satisfaction requires both that the debtor intend that the proffered amount be given in full satisfaction of the disputed claim and that the claimant accept that amount in accordance with the debtor's intent.").

to distinguish between Brucato's Project X and NIMA claims on the one hand and Brucato's commission claim for the ICCP/Intelink sale on the other. It is appropriate to make this distinction because the December 9 letter treats each claim separately and clearly states that Ezenia offered a reduced (1% versus 4%) commission payment for the ICCP/Intelink claim, but offered no payment at all for the Project X and NIMA claims.

No accord and satisfaction occurred with respect to the Project X and NIMA claims for two reasons. First, Ezenia failed to offer any consideration in exchange for Brucato's alleged agreement to discharge these claims by accord and satisfaction. Ezenia's payment tendered with the December 9 letter, which explicitly refused payment on either the Project X or NIMA claim, related to other claims, and it is sensibly settled that payment for one or more undisputed claims is not adequate consideration for an accord and satisfaction of other disputed claims arising out of separate transactions.[9] Further, as the Fourth Circuit has recognized, this principle holds even when the claims arise from separate promises pursuant to the same contract. *Jefferson Standard Life Ins. Co. v. Lightsey,* 49 F.2d 586, 589 (4th Cir.1931) (holding that payment of $5,000 death benefit did not discharge separate and distinct disputed claim for $10,000 accidental death benefit arising from same contract).[10] Thus, Ezenia's offer of a lump sum check in full payment of two undisputed claims, and in partial payment of a third, was not adequate consideration for other distinct claims arising out of separate sales transactions that Ezenia disputed and refused to pay at all. Put differently, Ezenia admitted that it owed Brucato the payments included in the December 9 check, and thus conceded nothing in exchange for an agreement to discharge the remaining disputed claims. It follows, therefore, that Ezenia may not avoid these claims on the basis of accord and satisfaction.

In response, Ezenia argues that Brucato, in his November 20 letter, made an aggregate claim for all outstanding sales commissions and that Ezenia, in its December 9 letter, resolved this aggregate claim in its entirety. To support its argument, Ezenia relies on the Supreme Court's decision in *Chicago, M. & S.P.R. Co. v. Clark,* 178 U.S. 353, 20 S.Ct. 924, 44

---

**9.** *See, e.g., Jefferson Standard Life Ins. Co. v. Lightsey,* 49 F.2d 586, 589 (4th Cir.1931) ("Payment of an amount concededly due on one of two [separate and distinct] claims arising on separate promises in the same contract is not a good consideration for a release of a claim on the other."); *Matlack Coal & Iron Corp. v. New York Quebracho Extract Co.,* 30 F.2d 275 (2d Cir.1929) (citing *Fire Ins. Ass'n v. Wickham,* 141 U.S. 564, 577, 12 S.Ct. 84, 35 L.Ed. 860 (1891)); 2–7 Corbin on Contracts § 7.17 ("If one party makes two wholly independent claims against another, arising out of separate transactions . . . [t]he payment of the amount of the claim that is not doubted or disputed is not consideration for a return promise."); Restatement 2d of Contracts, § 74 ("Payment of an obligation which is liquidated and undisputed is not consider-

ation for a promise to surrender an unliquidated claim which is wholly distinct.").

**10.** Ezenia distinguishes *Jefferson Standard,* arguing that this case involved a situation where, at the time the debtor insurance company paid the undisputed $5,000 life insurance claim, neither party was yet aware that a second disputed claim would be made under the accidental death provision of the policy. Yet, while it is true that the Fourth Circuit noted that the facts of that case also failed to establish a meeting of the minds required for an accord and satisfaction, the Fourth Circuit relied alternatively on both grounds in making its decision. *See Jefferson Standard,* 49 F.2d at 590.

L.Ed. 1099 (1900),[11] which held that:

> [W]here an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole.

*Id.* at 367, 20 S.Ct. 924. Further, Ezenia argues that the leading Supreme Court of Virginia case interpreting § 8.3A–311 appears to be in accord with this approach. *See Gelles & Sons,* 569 S.E.2d at 406–07 (treating single payment to subcontractor for a single brick laying contract as an accord and satisfaction where subcontractor had submitted multiple invoices and debtor intended to admit some invoices but to deny others).

 Yet, Ezenia's argument is ultimately unpersuasive because it fails to distinguish between an aggregate claim and, as here, multiple distinct claims that arise from the same contract. Judge Learned Hand described this distinction with characteristic clarity as follows:

> If the libellant's claim had been made up of several items arising upon the breach of a single promise, of which the respondent recognized some and repudiated others, a payment of those conceded would have been good consideration for the discharge of the whole claim on that breach.... [Yet,] when there are two claims arising upon separate promises, though in the same contract, payment of the amount concededly due upon one will not be a good consideration for the release of damages upon breach of the other.

*Matlack Coal & Iron Corp. v. New York Quebracho Extract Co.,* 30 F.2d 275, 276 (2d Cir.1929) (citing and distinguishing *Clark* among other cases). Further, *Gelles & Sons* is fully in accord with the distinction drawn by Judge Hand. Specifically, the claimants in *Gelles & Sons* agreed to perform brick laying work on a single construction project and thus, although they submitted multiple invoices for their work, these several invoiced items arose from a single transaction and a single promise, namely to complete the brick laying work on a single construction project. These facts are in sharp contrast to this case where Brucato included in his November 20 letter an accounting of eight distinct commission claims related to sales involving different clients, different products, different times, and different commission percentage payments. Thus, although all eight claims arose from the same employment contract, they involved separate and independent sales transactions. What is more, Ezenia did not treat Brucato's claims in the aggregate; rather, in its December 9 letter, Ezenia itemized each claim and independently admitted or denied each one, giving a specific and unique rationale for its response to each claim. These facts do not reflect an "aggregate claim" as in *Clark* and hence do not support Ezenia's argument that the two claims rejected without even partial payment were discharged by accord and satisfaction. In sum, where, as here, a debtor offers payment for one or more undisputed claims such payment does not operate to discharge by accord and satisfaction other explicitly disputed claims arising out of separate and distinct transactions.

 The second reason that no accord and satisfaction occurred with respect to the Project X and NIMA claims is that

---

**11.** Ezenia cites *Clark* as quoted in a dissenting Fourth Circuit opinion. *See Masonite Corp. v. Norfolk & W.R. Co.,* 601 F.2d 724 (4th Cir. 1979) (majority holding that payment by defendant railroad of undisputed claim for proceeds of salvage sale was not consideration for release of plaintiff shipper's claim for destruction of plywood).

a reasonable person would not have considered the December 9 check to be tendered in full satisfaction of the Project X and NIMA claims. In this respect, the Supreme Court of Virginia has held that § 8.3A–311 requires not only that the debtor intend that the proffered amount be given in full satisfaction of the disputed claim, but also that a reasonable person would have "considered that the 'instrument was tendered as full satisfaction of the claim[.]'" *See Gelles & Sons,* 569 S.E.2d at 408 (quoting *Webb Bus. Promotions, Inc. v. Am. Elec. & Entm't Corp.,* 617 N.W.2d 67, 76 (Minn.2000)). To be sure, Brucato himself has admitted that it was clear following the December 9 letter that Ezenia did not intend to give Brucato any additional money. Yet, a "drop-dead letter," [12] by itself, is not sufficient to constitute an accord and satisfaction. Rather, it is necessary to distinguish between an absolute refusal to make any payment on a claim or claims, on the one hand, and a final offer of payment that purports to be offered in full satisfaction of all disputed claims, on the other. Here, had Ezenia responded to Brucato's November 20 letter with a general response disputing Brucato's claims, rather than a specific itemization, but stating that it was sending to Brucato a check for an amount in satisfaction of all of his claims, this perhaps would have warned a reasonable person that negotiating the check would constitute an accord and satisfaction of all claims. In this case, however, the letter specifically itemized each claim, and explained that Ezenia intended to pay some of these claims in full, to offer partial payment on others, and to deny still others outright. Thus, while reasonable persons would have understood clearly that Ezenia did not intend to pay Brucato anything more on Brucato's claims, a reasonable person would not have understood that the payment offered for the ICCP/Intelink claim and the two other undisputed claims was conditioned on releasing the plainly disputed Project X and NIMA claims.[13] For these reasons, the Project X and NIMA[14] claims were not discharged by accord and satisfaction.

A different result obtains with respect to Brucato's claim for the ICCP/Intelink sale. Instead of flatly rejecting Brucato's claim for this sale, the December 9 letter and enclosed check offered Brucato a reduced commission payment of 1% (Brucato's renewal rate), rather than the 4% Brucato demanded (the rate prescribed for new sales). Ezenia's offer of reduced payment, and Brucato's acceptance by negotiating the December 9 check, satisfied the requirements of § 8.3A–311, and thus an accord and satisfaction occurred. First, Ezenia in good

---

**12.** As the trial judge said in *Gelles & Sons,* this letter was "in effect a drop dead letter that says, 'This is it.' This is what we're going to pay you." *See Gelles & Sons,* 569 S.E.2d at 408 (internal quotations omitted).

**13.** Although the test is one of objective reasonableness, it is worth noting that when Brucato was asked during his deposition "What, if anything, did you believe you were giving up by signing the checks?" Brucato responded, "Nothing. There was no instructions [sic] on the checks saying that by accepting this check the case or the claims were ended or anything like that."

Nor is this reasonableness issue a disputed issue of fact for the jury as the facts in this case are undisputed and no reasonable jury could conclude from the undisputed facts that a reasonable person would have considered the December 9 check to be tendered in full satisfaction of the Project X and NIMA claims. In any event, the absence of consideration is an independent and alternative basis for concluding that no accord and satisfaction occurred with respect to these claims.

**14.** At trial, Brucato abandoned the NIMA claim after Ezenia adduced additional evidence that payment was never received for this sale.

faith tendered payment in full satisfaction of a disputed claim. *See* Va.Code § 8.3A–311(a). Next, the letter contained a conspicuous statement that the check represented "payments for outstanding commission" that a reasonable person would have understood to be a tender of partial payment in full satisfaction of this outstanding commission claim. *See* Va.Code § 8.3A–311(b); *Gelles & Sons*, 569 S.E.2d at 408. Further, the payment was adequate consideration for a promise to accept the payment in full satisfaction of an outstanding disputed claim. *See* 2–7 Corbin on Contracts § 7.17 (describing majority position that when one party claims large amount and other party admits duty to pay lesser sum, but denies remainder, the claim is to be regarded as unliquidated and payment of the lesser, even though admitted, is consideration for promise to accept in full satisfaction).[15] And finally, Brucato completed the accord and satisfaction when he negotiated the instrument and failed to tender repayment within ninety days as permitted by statute to avoid discharge of his claim. *See* Va.Code § 8.3A–311(c). Thus, where, as here, a debtor offers an amount less than that demanded and denies the remainder, and a reasonable person would have understood the offer to be tendered as full satisfaction of the disputed claim, the claim is discharged when the claimant accepts and negotiates the instrument in payment for the lesser sum.

An appropriate Order has issued.

---

**15.** *See also, e.g., Nassoiy v. Tomlinson*, 148 N.Y. 326, 42 N.E. 715, 716 (1896) (holding that mere acceptance of partial payment of claim, even if defendant paid no more than amount he admittedly owed, is an accord and satisfaction when any part of entire claim in dispute) (cited with approval in *Dexter–Portland Cement Co. v. Acme Supply Co.*, 147 Va. 758, 133 S.E. 788, 793 (1926)); *Hanley Co. v. Am. Cement Co.*, 108 Conn. 469, 143 A. 566, 567 (1928) ("Where it is admitted that one of two specific sums is due, but there is a dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to accord and satisfaction.").